ARNOVITZ, APPELLANT, *v.* WOZAR, APPELLEE.

[Cite as Arnovitz v. Wozar, 9 Ohio App. 2d 16.]

(No. 2886—Decided December 1, 1964.)

*Messrs. White & Smallwood* and *Mr. Herman D. Arnovitz,* for appellant.

*Messrs. Marshall & Smith,* for appellee.

KERNS, P. J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Montgomery County entered upon a verdict for the defendant in an action for damages for personal injuries sustained as the result of an automobile collision at the intersection of Monument Avenue and Webster Street in Dayton, Ohio.

The two streets intersect at right angles, Monument Avenue running east and west and Webster Street running north and south. A traffic light controls the movement of vehicles entering the intersection.

At the time of the collision, on February 14, 1961, at about 9:15 a. m., the plaintiff was travelling west on Monument Avenue and the defendant was proceeding north on Webster Street. In the trial court, both the plaintiff and defendant claimed that they entered the intersection while the traffic signal was green, and this conflict presented the predominant factual issue for the consideration of the jury.

In the present appeal, the plaintiff insists that several er-

rors occurred in the trial court, which were prejudicial to him. However, after carefully examining each, the only one in our view which appears to deserve particular attention and comment is stated by the plaintiff, as follows:

"1. Misconduct on the part of counsel for the defendant-appellee during the course of the trial in this, to wit: that during cross-examination by counsel for the defendant-appellee of Martin Begley, one of the witnesses for plaintiff-appellant, counsel for defendant-appellee propounded two questions to said witness taken out of context of a three (3) page paper writing signed by the said Martin Begley, which paper writing was in the possession of and under the control of counsel for defendant-appellee; that during said cross-examination counsel for the plaintiff-appellant moved the court to require counsel for defendant-appellee to permit both the witness and the counsel for plaintiff-appellant to inspect said paper writing, which motion the court granted and directed counsel for defendant-appellee to permit the witness and counsel for plaintiff-appellant to inspect said paper writing; that notwithstanding said order of the court, counsel for the defendant-appellee refused to comply with the court's order."

Following opening statements by counsel for both parties and the calling of the defendant by counsel for plaintiff for cross-examination, the first witness called to testify for and on behalf of plaintiff was Martin Begley, an eye witness to the collision. At the time of the accident and immediately prior thereto, Mr. Begley was operating an automobile west on Monument Avenue a short distance to the rear and to the left of the automobile driven by plaintiff.

On direct examination, this witness testified that the traffic light was green for Monument Avenue traffic when the defendant's automobile entered the intersection on Webster Street. This testimony was elicited in September 1963.

On cross-examination, defendant's counsel asked the witness whether he had been questioned in March 1961, about a month after the accident, and whether this interrogation was reduced to writing and signed by the witness. The witness answered affirmatively.

At this point in the trial, plaintiff requested permission to see the signed statement but was refused by defense counsel on

the alleged ground that it was personal and privileged property.

After a lengthy discussion between court and counsel, both in and out of the hearing of the jury, the witness was permitted to identify his signature on the statement.

After a few more questions, counsel for plaintiff again interposed an objection on the ground that he thought that the witness or counsel should be permitted to view the statement in its entirety.

At this point, the court stated "the court will verify it after the question is put, or questions, as the case may be," and immediately thereafter, the following testimony was presented:

"The Court: The court will verify it after the question is put, or questions, as the case may be.

"Mr. Smith: Do you recall stating, Mr. Begley, 'Just as the cars hit I looked up at the traffic light and saw it was green at that moment for westbound traffic. When I looked up at the moment of impact was the first time I really observed the traffic signal.' Do you recall making that statement? A. I don't recall it, no sir.

"(Thereupon the statement was handed to the court, and out of the hearing of the jury, the reporter read two quotations to the court so that he might examine them against the handwritten statement.)

"Mr. Smith: Does the record show that the court verifies the accuracy of my reading?

"The Court: Correct. Was actually on the statement, just asked the witness and answered by the witness.

"Q. You have stated that you don't remember saying, 'I can only say that the light was green at the moment of impact.' You don't remember saying that?

"Mr. White: I object, your Honor. This is cross-examination.

"Mr. Smith: This is cross-examination, and I am not constrained by any such ruling.

"The Court: Overruled.

"A. Yes, but I have stated also that the light was green when I looked at it.

"Q. That's right. And do you remember stating also immediately following that sentence, 'What it was before that I can't say.'? A. That's right, sir.

"The Court: That is a correct statement.

"A. That is correct.

"The Court: The court is saying that as a matter of verification. That is a correct reading of the statement."

The noon recess interrupted the cross-examination of the witness, following which the plaintiff renewed his request to inspect the statement.

Out of the hearing of the jury, the court ordered the defense to produce the statement for examination by plaintiff's counsel and for examination by the witness, which order was refused by defense counsel.

Shortly thereafter, in the presence of the jury, the plaintiff renewed the request for the right to inspect the written statement; and in order to fairly represent the exchange which followed immediately thereafter, we deem it advisable to quote further from the record:

"Mr. White: If the court please, counsel for plaintiff renews the request in chambers, and I would like the court to instruct the jury as to the request and defendant's position with respect to the court's order.

"Mr. Smith: We will object to any such—.

"The Court: You are again renewing your request you made in the court's chambers. The court will grant the request in the same terms it granted the request in the record in the court's chambers, and will request counsel for defendant to comply with the court's order.

"Mr. Smith: I think, as the court says, the defense has already taken exceptions to the ruling of the court in the matter, and must respectfully decline the invitation.

"The Court: Will you both step forward?

"(Thereupon followed a discussion between the court and counsel, out of hearing of the jury and of this reporter.)

"The Court: Members of the jury, counsel for plaintiff have requested counsel for defendant, in the presence of the court in chambers, for the privilege of inspecting the statement made by the witness on the witness stand to a person in the witness's handwriting, which statement has been referred to by counsel for defendant with relation to two separate statements, and the witness has testified as to those two statements. Counsel for plaintiff have requested leave to inspect this statement for

the purpose of reading the statement in full to determine whether or not the witness made any other statements in the paper writings which have been referred to by counsel for defendant, that bear upon the subject matter of the statements quoted by counsel for defendant from the paper writing, and which may or may not have a tendency to modify, qualify or further explain the statements referred to and quoted by counsel for defendant, and testified to by the witness.

"The court has requested counsel for defendant to deliver the statement to counsel for plaintiff, for the sole purpose of counsel for plaintiff inspecting and reading the statement in full, and for the further purpose of the witness reading this statement in full, so that if it should develop that there is anything further in the paper writing and written statement bearing upon the subject matter of the questions put by counsel for defendant, which contain quotations from the written statement, then to ask questions of this witness concerning any further statements, if any, made by him in the paper writing. The court has requested and ordered counsel for defendant to deliver the paper writing, and counsel for defendant has respectfully declined to deliver the paper writing on the grounds that under the law he is not bound to deliver such paper writing for the purpose requested by the court.

"There was no personal affront of any kind intended by counsel for defendant in refusing to turn over the statement for inspection. Under the circumstances, at this stage of the case, the court will state to the jury that counsel for plaintiff will have the right, if they desire, to make comment upon the refusal of counsel for defendant to deliver the paper writing to counsel for plaintiff for inspection for the purpose already referred to by the court, providing such comment is proper and within the bounds of the purpose defined by the court in the statement to the jury. So counsel may proceed.

"*Out of hearing of the jury*

"Mr. Smith: Note our exceptions to the court's remarks. At this time, if the court please, we move for a mistrial and seriously urge the court to declare a mistrial. The jury is unable in the face of the court's comment to act fairly and impartially with respect to the rights of the parties.

"The Court: The court will overrule the motion for a mistrial and will add to the instructions already given to the jury in its final charge relative to the subject matter of this ruling."

Immediately thereafter, on redirect examination, the witness, Begley, was asked only one question which was met with objection and the objection was sustained. At that time, no reference was made to the disputed statement and no attempt was made to reconcile any inconsistency or contradiction which the jury may have inferred from the testimony of the witness on cross-examination.

The defendant, in support of his contention that he was justified in refusing the trial court's order to permit plaintiff to see the signed statement of the witness for the purpose of redirect examination to explain any inconsistency or contradiction, cites the following cases: *In re Keough,* 151 Ohio St. 307; *In re Hyde,* 149 Ohio St. 407; *In re Shoup,* 154 Ohio St. 221; *In re Tichy,* 161 Ohio St. 104; *In re Bates,* 167 Ohio St. 46; *In re Klemann,* 132 Ohio St. 187; *Boyd* v. *United States,* 116 U. S. 616; *Hickman, Admr.,* v. *Taylor,* 329 U. S. 495.

Although all of those cases disapprove of allowing a party to an action to pry into an opposing party's case file by the indiscriminate use of pretrial discovery methods, none of the cited cases will reach the narrower question of trial procedure which is now before us.

The only other case submitted by defendant—*People, ex rel. Morgan,* v. *Mulliken,* 41 Ill. App. 2d 282, 190 N. E. 2d 502—is also distinguishable from the case at bar. In that case, the decision was based on oral contradictory statements, but the court recognized, at page 292, that there could be such use of a document or memorandum as would require counsel to submit it to opposing counsel for examination.

In the present case, the witness, Begley, initially answered that he did not recall making certain prior statements which were included in a question propounded by defense counsel during cross-examination, and this indecisive answer appears to bring the facts of this case squarely in touch with the holding of the Court of Appeals for Hamilton County in *Bluestein* v. *Thompson,* 102 Ohio App. 157. In that case, which was heard by the trial court without the intervention of a jury, the appel-

late court held "* * * it is prejudicial error to refuse to allow counsel * * * to see such document for the purpose of redirect examination to explain the apparent contradiction."

Although we are not judicially bound by the authority of the *Bluestein case,* the conclusion reached therein appears to be in line with the majority view in the United States. In 6 Wigmore on Evidence 477, Section 1861, it is said:

"* * * the general rule suffers a virtual exception, well recognized at common law, where a party having a document *at the trial,* uses it for any evidential purpose. Here it is no hardship to him, and it is a decided dictate of fairness, to require him to *submit it for the opponent's inspection,* even though the former has not yet technically and finally put it in evidence.

"* * *

"* * * when a writing is *offered to a witness* for the preliminary purpose of testifying to its *execution* or *identity,* with the object of not actually offering it in evidence until a later stage in the case, fairness requires that *the opponent should see it* then or before the witness leaves the stand, in order that the opponent may cross-examine as to the writing; for otherwise the writing might not be actually offered until after the witness had left the courtroom and become unavailable for the purpose of cross-examination. This application of the rule is in the United States generally accepted. And by like token, the privilege of inspection of a document used in the cross-examination of a witness should be accorded the opponent."

See, also, 4 Wigmore on Evidence 512, Section 1261(5).

In our opinion, the statute making communications between certain persons privileged (Section 2317.02, Revised Code) does not anticipate and should not be extended to include the privilege claimed by the defendant in the instant case. Such statutes are in derogation of the common law and should be strictly construed. *Weis* v. *Weis,* 147 Ohio St. 416. The case of *Hickman, Admr.,* v. *Taylor, supra,* from which the defendant quotes extensively, also supports the conclusion that statements secured from a witness in anticipation of litigation are not necessarily privileged. The decision in that case was based rather upon the unreasonable use of a pretrial discovery device.

Needless to say, the virtue sought in every trial is truthfulness. With this in mind, we perceive a real distinction between affording a statement, such as the one in issue in this case, a cloak of protection *before the trial* and affording the same statement immunity *during the course of a trial.* If defense counsel's work product in preparation for trial was an open book, cross-examination would lose its vitality, and the search for truth by means of cross-examination would be defeated. However, after cross-examination, the reason for nondisclosure of the content of a prior statement has disappeared. At that point, secrecy would be more apt to promote deception than truth. And fairness, in view of no incident hardship or prejudice to the rights of the original proponent of the previous statement, would seem to require that opposing counsel be permitted to see the entire statement so that he might, on redirect examination, attempt to resolve any inconsistency or contradiction in the testimony of a witness on cross-examination. Hence, in the ultimate search for truth, the reason for denying discovery *before trial* may be the same as the reason for ordering exposure *during trial.*

Accordingly, we are of the opinion that the defendant had a right to the exclusive possession of the prior statement of the witness until its tactical use for the purpose of cross-examination was exhausted. However, by the same token, we are of the opinion that the defendant was thereafter required by law to obey the order of the court commanding him to allow opposing counsel to see the statement in his possession for the purpose of redirect examination of the witness Begley.

In the present case, the defendant also argues that the order of the court violated the Fourth Amendment to the Constitution of the United States which protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Suffice it to say that we find no merit in this argument.

But there still remains the question of whether the failure of the defendant to allow opposing counsel to see the disputed statement before redirect examination constitutes *prejudicial* error. Begley's testimony was undoubtedly important. He was apparently a disinterested party, and was an eye witness to the

collision. Before any question concerning his previous statement arose at the trial, he had testified positively that the traffic light was green and that he had looked at the light before the collision occurred. The limited use of his previous statement during cross-examination undoubtedly weakened the testimony given by him on direct examination. And in the absence of the disputed statement or any testimony with reference thereto, we have no way of determining whether redirect examination could have renewed the thrust of his direct testimony. Neither can we say with any degree of certainty that the plaintiff was not prejudiced by being denied the opportunity to view the signed statement so that he could conduct redirect examination upon the matters introduced during cross-examination.

The judgment must, therefore, be reversed and the cause remanded for a new trial.

*Judgment reversed.*

SHERER and CRAWFORD, JJ., concur.