**Betty Jo and Roy SHIPMAN,\***
**Petitioners,**

**v.**

**DIVISION OF SOCIAL SERVICES, and Children's Bureau of Delaware, Inc., Respondents.**

**In the Matter of Sheila Margaret SHIPMAN, a minor child.**

Family Court of Delaware, New Castle County.

Submitted May 18, 1981.

Decided May 19, 1981.

\* A pseudonym adopted to shield petitioners' privacy.

Frederick S. Kessler, Wilmington, for petitioners.

L. Susan Faw, Wilmington, for respondent Children's Bureau, Inc.

Timothy A. Casey and Carol S. Widing, Wilmington, for respondent Division of Social Services.

GALLAGHER, Judge.

Two petitions are before the court. First, a petition by the Shipmans (parents) against the Division of Social Services (DSS) and Children's Bureau, as intervenor, for the establishment of visitation privileges with their child, Sheila, presently in custody of DSS. Second, a petition by Children's Bureau against parents for termination of their parental rights. The positions of Children's Bureau and DSS are in tandem.

The following issues must be resolved on the motion of DSS for production of parents' medical records: [1]

a. Are those records relevant in these proceedings?

b. If they are relevant, are they admissible in evidence on claim of privilege?

c. If the records are privileged, has there been actual or statutory waiver of the privilege in these proceedings?

Sheila was born on July 30, 1970. In May 1975, she was adopted by parents. Four years later she began exhibiting severe emotional problems. In June 1979, parents consented to DSS having custody of Sheila, and that consent resulted in an order of this court dated July 11, 1979, granting custody of Sheila to DSS. Under a purchase of services agreement, Sheila was transferred for care in July 1979 to the Children's Bureau by DSS who placed Sheila in a foster home. Children's Bureau claims that Sheila has progressed remarkably since that placement.

In August 1980, parents, ages 59 and 57, petitioned this court for specific visitation privileges with Sheila naming DSS as respondent. They allege that DSS has refused all visitation and contact by them with Sheila.

On January 5, 1981, this court granted the motion of Children's Bureau for leave to intervene in the visitation proceeding.

On February 9, 1981, Children's Bureau filed a petition with the court for termination of parents' parental rights over Sheila. The petition alleges that parents "are not able and have failed to plan adequately for the child's mental and emotional health and development."

Children's Bureau has moved for production of parents' medical records. Parents resisted production claiming that the records are privileged and are not, therefore, admissible in evidence.

On April 24, 1981, I ruled, over parents' objection, that Children's Bureau might subpoena the medical records of Kurt Anstreicher, M.D., the Delaware State Hospital, the Wilmington Medical Center and the Mental Hygiene Clinic. I also ruled that if, after examining the records, Mr. Kessler claimed privilege for petitioners, the records were to be sealed and not be opened without further court order.

Are the medical records relevant to these proceedings?

■ With respect to the petition for visitation, the records are certainly relevant. 13 *Del.C.* § 727(a) reads as follows:

"A parent not granted custody of the child is entitled to reasonable visitation privileges unless the Court finds, after a hearing, that visitation by the parent would endanger the child's physical health or significantly impair his emotional development."

1. The original opinion deals with additional issues. Only the issues relating to the medical records will be covered in this abbreviated version of the opinion.

While the parties concede that this statute is relevant to the visitation issue, I am not sure that it is. This court recently held that chapter 7 only applies to proceedings between parents of a child.[2] That holding is consistent with my holding here. Further it is my view that once custody of a child is removed from the parents under 10 *Del.C.* § 937, even by consent, that visitation privileges, if any, are entirely up to the new custodian or the court and are not dependent upon the peculiar provisions of section 727(a). It may well be that factors much less serious then those that would endanger the child's physical health or emotional development would justify denial of visitation where a new custodian takes control of the child under title 10. For present purposes there is no difficulty because we are faced with allegations of danger to the child's mental health and emotional development.

Children's Bureau claims that if Sheila visits her parents, her emotional development will be impaired. It is averred that parents have a long history of emotional problems which have not been resolved. Assuming that the proof at the trial will support these allegations, I conclude that the court might well deny the petition for visitation since parents' mental and emotional problems are equally if not more significant than the child's emotional or mental problems. If parents are suffering from problems of that kind their contacts with Sheila could visit the same problems upon her. Sheila has had difficulties in the past of an emotional nature so that the risk of increasing her burden might well be impermissible.

With respect to the termination proceedings, Children's Bureau concedes that it must demonstrate not only that the parents have failed or are unable to plan adequately for Sheila's emotional development, but that Sheila has been in its care and that there is a history of parental neglect or abuse.

The termination of parental rights statute does not define "neglect" or "abuse."

Under 16 *Del.C.* § 902, "child abuse and neglect" includes not only physical injury by other than accidental means, but also "... injury resulting in a mental or emotional condition which is a result of abuse or neglect, negligent treatment, sexual abuse, maltreatment, mistreatment, nontreatment, exploitation or abandonment ..." Thus, parents' mental and emotional condition and history of neglect or abuse of Sheila, are relevant in determining whether their parental rights should be terminated. I flatly reject the suggestion advanced by parents that the court must focus attention strictly on Sheila's emotional and mental condition and not consider their emotional and mental condition. The medical records have definite significance and relevance in both the visitation and termination proceedings and must be made available to Children's Bureau unless they are protected by privilege.

Parents rely on 24 *Del.C.* § 1703(g) and D.R.E. 503 as creating a privilege which protects their medical records from disclosure.

24 *Del.C.* § 1703(g) reads as follows:

"The confidential relations and communications between a physician registered under this chapter and his patient are placed on the same basis as those provided by law between attorney and client, and nothing in this subchapter shall be construed to require any such privileged communications to be disclosed except as provided for by law."

D.R.E. 503(b) reads as follows:

"A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family."

---

2. *Linda U. v. Florence A. McG.*, Del.Fam., Civil Nos. C–4130, D–3910 (March 31, 1981).

■ Under most circumstances parents would be justified in claiming privilege for their medical records and the court would direct that those records be protected from disclosure under the statute and rule. The question remains does privilege protect the records from disclosure in proceedings involving a child and/or has there been a waiver of privilege by the action of parents[3] or by virtue of any particular statute?

I feel that it is my principal task and duty at all times to protect the interests of this child and to act in what I perceive to be her best interests. If need be, parental rights must be sacrificed to promote the child's best interest. I will go as far as I must while acting within the law to prevent a claim of privilege from foreclosing the admission of evidence with respect to the mental or emotional condition of a child's parents where such a ruling might foster and promote the continuation of a relationship between the parents and the child to the child's mental or emotional detriment.

In addressing the subject of termination of parental rights the legislature clearly expressed the following point of view in 13 *Del.C.* § 1113:

"This chapter is designed to achieve without undue delay the paramount objective of the best interest of the child, and all questions of interpretation shall be resolved with that objective in mind. Where there appears to be a conflict between the best interest of the parent(s) and the child, the best interest of the child shall prevail."

"Best interests" is defined in 13 *Del.C.* § 722; and 16 *Del.C.* § 908 reads as follows:

"The physician-patient privilege, husband-wife privilege or any privilege except the attorney-client privilege, provided for by professions such as social work or nursing, covered by law or a code of ethics regarding practitioner-client confi-

dences, both as they relate to the competency of the witness and to the exclusion of evidence, shall not pertain in any civil or criminal litigation in which a person's neglect, abuse, dependency, exploitation or abandonment is in issue nor in any judicial proceeding resulting from a report submitted pursuant to this chapter."

■ It is my view that when parents filed their petition for visitation and when they took a position in opposition to the petition for termination of parental rights they placed squarely in issue their own physical, emotional and mental condition for the court to consider. In my view, they cannot claim a right to visit with Sheila, oppose the petition for termination of parental rights and at the same time seek to hide from the court behind the door of privilege, relevant evidence pertaining to their physical, mental or emotional health.

If there is any doubt about this ruling then I believe such doubt is dispelled by *D.R.E.* 503(d)(3) reading as follows:

"There is no privilege under this rule as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense."

16 *Del.C.* Chapter 51, subchapter V, establishes a mental health patient's bill of rights. Section 5161(a)(7) requires the Division of Mental Health to maintain certain records pertaining to the patient and provides that those records are not to be released to any person or agency except, *inter alia*, pursuant to an order of the court. It would appear that if the court should rule that those records should be disclosed and enter an appropriate order then the privilege would be inapplicable.

---

**3.** I decline to. find a waiver from the mere signing of the consent solicited by Children's Bureau, a copy of which is attached to the brief of Children's Bureau. First of all, the authorization only applies to the wife's records and has no bearing on the husband's records. More importantly, I would think that such a consent could be revoked at any time and I regard the consent as having been revoked by wife's position in these proceedings.

The court is not aided in any significant way in deciding the pending issues by any court decision. However, there is a recent decision, *Husgen v. Stussie*, Mo.Ct.App., 617 S.W.2d 414 (1981), which should be considered in passing. The Missouri Court held that a parent who seeks custody of his children in a divorce action does not bring his mental health into issue and does not thereby waive his statutory physician-patient privilege. The court ruled that it could preserve the psychiatrist-patient privilege intact by virtue of its order that the parties seeking custody submit to a mental examination. I do not agree with that holding because it is my view that a mental examination of a parent seeking custody of a child is far more significant when, as part of such examination, records pertaining to prior mental or emotional disorder are made available to the examiner. In other words, I do not agree that merely permitting a present examination obviates the necessity for producing previous medical records. It would not be unlike the task of trying to judge the import of today's world events without knowledge of earlier history.

It should be noted that statutory privileges such as the physician-patient privilege are in derogation of the common law and should be strictly construed. *Triplett v. Board of Social Protection*, Or.Ct.App., 19 Or.App. 408, 528 P.2d 563, 566 (1974); *Con-yers v. Massa*, Colo.Ct.App., 512 P.2d 283, 284 (1973); and *Arnovitz v. Wozar*, Oh.Ct. App., 9 Ohio App.2d 16, 222 N.E.2d 660, 665 (1964).

I am compelled by the law and the facts to make parents' medical records available to Children's Bureau for use in these proceedings. It is crucial that those records be admitted into evidence to help me decide the visitation and termination issues in harmony with the interests of this 10 year old child. There is no basis in law or fact for a ruling that would preclude the admission of these vital records into evidence by virtue of a privilege personal to parents. If the allegations of Children's Bureau are true but should fail in proof due to lack of sufficient evidence, withholding those records might lead to a decision detrimental to the child's interests. The records shall be unsealed and made immediately available to Children's Bureau for use in these proceedings.

IT IS SO ORDERED.