Hart, J.
 

 The contestees seek a reversal of the judgment in this case mainly because of alleged errors on. the part of the trial court,in admitting certain items of' evidence adduced by the contestant.
 

 In the course of the trial, the contestant offered in evidence and the court admitted and sent to the jury certified copies of a former proceeding in the Probate Court of Hardin county, in which proceeding the contestant was designated as the heir at law of Weis whose will is the subject of contest in this action. The admission of this evidence is assigned as error on the grounds that there was no issue in the case to which the evidence was applicable; that the petition, alleged that Weis died leaving .contestant his only and sole heir at law; and that that fact was not denied either by pleading or the introduction of evidence. The claim of the contestees is that the admission of such evidence
 
 *419
 
 tended to overemphasize and overimpress the jury with the degree of relationship existing between Weis and the contestant.
 

 Unquestionably, the contestant was obliged to establish the fact that he had a legal interest in the estate of Weis, otherwise he would have no standing in court as the contestant of the decedent’s will. The fact that contestant’s claim in that respect was not denied by the contestees did not preclude his right to establish it by the best evidence obtainable, and the admission of the evidence under the circumstances was well within the sound discretion of the court.
 

 In the course of the trial, the contestant called as witnesses several unregistered nurses employed by the San Antonio hospital and to whom was assigned from time to time the care of Weis while he was a patient in that institution. In connection with the testimony of each nurse, the court permitted her, without exhausting her memory as to these details' to refer to so much of the hospital chart as had been prepared by her during the period of her service. Furthermore, both registered and unregistered nurses were, over the objection of the contestees, permitted to express opinions as to the mental capacity of Weis.
 

 The contestees complain that the court erred in permitting these witnesses to refresh their memories from -the hospital chart before they had exhausted their memories on the subject; erred in permitting them to testify on this subject because their testimony was privileged; and erred in permitting them to express an opinion as to mental capacity.
 

 An examination of the record will disclose that, when a nurse witness was unable to recall from memory minute details as to time and character of treatment of Weis and of the medicines administered to bim, she was permitted to refer to the portion of the chart which she herself had prepared and to testify from it.
 
 *420
 
 This procedure satisfies legal requirements and there can be no prejudice in refreshing memory in this manner, especially when it is not shown, as it was not in this case, that the record from which the nurse’s memory was refreshed was false or inaccurate. However, the propriety of allowing a witness to refresh his memory from a record which he has made in due course does not necessarily determine the admissibility of the record itself as an independent item of evidence. See
 
 Kellogg, Sr.,
 
 v.
 
 Industrial Commission,
 
 60 Ohio App., 22, 28, 19 N. E. (2d), 511.
 

 In most instances, each of the nurses called to testify by the contestant first testified as to her previous training and experience as a nurse; the periods of time she cared for Weis while he was a patient in the hospital (covering all told a period from May 20,1943, to the date of his death on June 15, 1943); and .the character of the service rendered, the medicines and treatment 'given him by her and his conduct, while under her care and observation.
 

 This testimony was followed by inquiries by counsel for the contestant to each nurse so testifying, as to the mental capacity of Weis based upon her observation of and experience with Weis while he was in the hospital.
 

 They were in character and order as follows:
 

 Was Weis, during the times you observed him, rational or irrational? Was he of sound or unsound mind? Did he have mental capacity to perform ordinary business transactions ? And finally: Did he have “sufficient mind and memory to form an intent and purpose to dispose of his property by will?” These inquiries were invariably answered favorably to the contestant.
 

 The contestees claim that the court erred in allowing the answers to these interrogatories to go to the jury because the witnesses were not qualified.
 

 
 *421
 
 In the early case of
 
 Runyan
 
 v.
 
 Price,
 
 15 Ohio St., 1, 86 Am. Dec., 459, the court held that a nonattestipg, non-expert witness may not express an opinion as to the incapacity of a testator to itfake a will. But, in the case of
 
 Dunlap, Exr.,
 
 v.
 
 Dunlap,
 
 89 Ohio St., 28, 104 N. E., 1006, this court unanimously held that in a proceeding to contest a will the question, “You may also further state whether or not he [the testator] had capacity to form a purpose and intention of disposing of his property by will, ’ ’ to which there was an affirmative answer, does not come within the rule of inhibition laid down in the case of
 
 Runyan
 
 v.
 
 Price, supra,
 
 and that the admission of such testimony by a trial court is riot error justifying the setting aside of a verdict sustaining the validity of a last will and testament.
 

 Chief Justice Nichols, in the course of his opinion in the
 
 Dunlap case,
 
 said:
 

 “We do not think the questions asked in the case now before the court are open to the objections of the court in
 
 Runyan
 
 v.
 
 Price, supra.
 
 To ask a witness if the testator had sufficient mind and memory to form an intention and purpose to dispose of his property by. will, is not equivalent to nor is it open to the same objections as is the question: ‘Had the testator sufficient capacity to make a will?’
 

 ‘ ‘ The capacity to make a will is much more comprehensive than a mere capacity to form an intention and purpose to make a will. The latter is merely one of the elements necessarily present in such testamentary capacity. One might have the one and yet utterly lack the other essential features,
 
 i. e.:
 
 First, that of an understanding of the nature and extent of his property; second, to know and appreciate his family connections and their natural - claims, if any, upon his bounty.
 

 “Furthermore, he might have had the ‘capacity,’ or as the question reads, the ‘mind and memory,’ to
 
 *422
 
 form an intention and purpose to make a will and do nothing toward carrying his intention and purpose into effect. It is equivalent only to desiring and determining to make a will. One might be wholly incapacitated to make a will and yet possessed of quite sufficient mind to wish and to decide to do so. It therefore was not. an invasion of the duty of the jury to ask this question in order to determine this particular phase of the testator’s mind.” ,
 

 The next year, in the case of
 
 Bahl
 
 v.
 
 Byal,
 
 90 Ohio St., 129, 106 N. E., 766, this court again held that it is not competent, in a proceeding to contest a will, for a witness to give an opinion as to whether the testator had capacity to make a will; but, that it is competent for the testator’s physician to express an opinion as to the actual condition of testator’s mind, founded on his study and observation of the testator while in professional attendance upon him at the time and prior to the date of the will, and as to whether the testator was capable of comprehending large and complicated business propositions or the distribution of a large estate. The court specifically approved and followed the cases of
 
 Runyan
 
 v.
 
 Price, supra,
 
 and
 
 Dunlap, Exr.,
 
 v.
 
 Dunlap, supra.
 

 Finally, in the case of
 
 Niemes
 
 v.
 
 Niemes,
 
 97 Ohio St., 145, 119 N. E., 503, this court unanimously held that in a will contest a lay witness, although not a subscribing witness, who has given testimony upon which an opinion can reasonably be based, may give his opinion as to the soundness or unsoundness of the mind of the testator and as to the capacity of the testator to understand important business matters.
 

 Again Chief Justice Nichols, writing for the court,, said:
 

 “The truth is, that the established rule of law permitting lay witnesses to give opinion as to the sanity or insanity of the testator justifies so broad a field of
 
 *423
 
 inquiry that it would appear an unwarranted practice to withhold any reasonable inquiry relating to the state of mind of the testator.”
 

 Following the implications of those eases, we find that the questions with reference to mental capacity put to the witnesses in the instant case were shaped in type, form and content substantially with the composite mold heretofore- established and approved by this court, and that as a result the trial court in the instant case did not err in permitting the witnesses to answer the questions propounded.
 

 One of the main contentions of the contestees is that the trial court erred in admitting as evidence the hospital charts or record of San Antonio hospital covering the hospitalization of Weis during the period of his last illness, including the date upon which his will was executed. It is the claim of the contestees that although nurses who attended Weis in 'the hospital during portions of this period were called as witnesses and testified as to the record entries made by each of them and as to the facts thereby recorded, there were entries made on the chart within this period by other nurses who were not called as witnesses; that the admission of the chart in evidence deprived contestees of the right to cross-examine such nurses concerning the facts recorded by them; and that error prejudicial to contestees thereby resulted.
 

 It must be.conceded that prior to the adoption of the Uniform Business Eecords as Evidence Act by a number of the states of the Union within the last decade, there was a sharp conflict of judicial opinion as to whether hospital records were admissible as evidence of the truth of facts therein recorded, under the shop-book rule, as an exception to the exclusionary hearsay rule of evidence. Even in the absence of statute, the weight of authority favors the admission
 
 *424
 
 of such records under certain conditions or qualifications. See annotations 75 A. L. R., 378.
 

 However, effective September 6,1939, Section 12102-23, General Code (118 Ohio Laws, 662), was enacted by the General Assembly and reads as follows:
 

 “A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify' its admission.”
 

 Under this and similar statutes, by the great weight of authority, those portions of hospital records made in the regular course of business and pertaining to the business of hospitalization and recording observable acts, transactions, occurrences or events incident to the treatment of a patient are admissible, in the absence of privilege, as evidence of the facts therein recorded, insofar as such records are helpful to an understanding of the medical or surgical aspects of the case, and insofar as relevant to the issues involved, provided such records have been prepared, identified and authenticated in the manner specified in the statute itself.
 
 Meiselman
 
 v.
 
 Crown Heights Hospital, Inc.,
 
 285 N. Y., 389, 34 N. E. (2d), 367;
 
 Gile
 
 v.
 
 Hudnutt,
 
 279 Mich., 358, 361, 272 N. W., 706;
 
 Kelly
 
 v.
 
 Ford Motor Co.,
 
 280 Mich., 378, 273 N. W., 737;
 
 Conlon
 
 v.
 
 John Hancock Mutual Life Ins. Co.,
 
 56 R. I., 88, 183 A., 850;
 
 Beverly Beach Club, Inc.,
 
 v.
 
 Marron,
 
 172 Md., 471, 192 A., 278;
 
 Borucki
 
 v.
 
 MacKenzie Brothers Co., Inc.,
 
 125 Conn., 92, 3 A. (2d), 224;
 
 Lykes Bros. S. S. Co., Inc.,
 
 v.
 
 Grubaugh,
 
 128 F. (2d), 387. See
 
 Lumpkin
 
 v.
 
 *425
 

 Metropolitan Life Ins. Co.,
 
 75 Ohio App., 310, 62 N. E. (2d), 189, affirmed on other grounds, 146 Ohio St., 25, 64 N. E. (2d), 63; 26 American Jurisprudence, 590, Section 6; 32 Corpus Juris Secundum, 634, Section 728; and 14 Southern California Law Review, 105.
 

 Such a hospital or physician’s office record may properly include case history, diagnosis by one qualified to make it, condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body and the behavior of and complaints made by the patient.
 
 Globe Indemnity Co.
 
 v.
 
 Reinhart,
 
 152 Md., 439, 446, 447, 137 A., 43;
 
 Adler
 
 v.
 
 New York Life Ins. Co.,
 
 33 F. (2d), 827;
 
 New York Life Ins. Co.
 
 v.
 
 Bullock,
 
 59 F. (2d), 747;
 
 Lund
 
 v.
 
 Olson,
 
 182 Minn., 204, 234 N. W., 310, 75 A. L. R., 371; 6 Wigmore on Evidence (3 Ed.), 36, Section 1707.
 

 The purpose of Section 12102-23, General Code, is to liberalize and broaden the shop-book rule, recognized at common law as an exception to the general rule excluding hearsay evidence, and to permit the admission of records regularly kept in the course of business and incident thereto, and, as applied to hospital records, to avoid the necessity and thereby the expense, inconvenience and sometimes the impossibility of calling as witnesses the attendants, nurses and physicians who have collaborated to make the hospital record of a patient.
 
 New York Life Ins. Co.
 
 v.
 
 Taylor,
 
 147 F. (2d), 297; 6 Wigmore on Evidence (3 Ed.), 36, Section 1707.
 

 The exception to the hearsay rule of evidence in such cases is based on the assumption that the records, made in the regular course of business by those who have, a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are
 
 *426
 
 accurate and trustworthy. In other words, such records are accepted as accurate and trustworthy, until inaccuracy is shown, upon faith in the routine by which and in the purpose for which they are made.
 
 Globe Indemnity Co.
 
 v.
 
 Reinhart, supra.
 
 Of course, if it should appear that such records have been made and kept solely for a self-serving purpose of the party offering them in evidence, it would be the duty of a trial court to refuse to admit them.
 
 Hoffman
 
 v.
 
 Palmer,
 
 129 F. (2d), 976;
 
 Needle
 
 v.
 
 New York Railways Corp.,
 
 237 N. Y. Supp., 547, 549;
 
 Conner
 
 v.
 
 Seattle, Renton & So. Ry. Co.,
 
 56 Wash., 310, 105 P., 634, 134 Am. St. Rep., 1110.
 

 Types of hospital or physician’s office records, which have been held admissible in evidence by the courts, are as follows:
 

 Record of examination of a patient on admission to a hospital, stating that he had no external injuries and observation that there was a deviation o'f the nasal septum
 
 (Ulm
 
 v.
 
 Moore-McCormack Lines, Inc.,
 
 115 F. [2d], 492); laboratory tests and history sheet
 
 (Grossman, Admr.,
 
 v.
 
 Delaware Electric Power Co., supra);
 
 observation that a patient was well under the influence of alcohol
 
 (Reed
 
 v.
 
 Order of United Commercial Travelers of America,
 
 123 F. [2d], 252); record of admission to hospital including observation, “odor of alcohol on breath”
 
 (Leonard
 
 v.
 
 Boston Elevated Ry. Co.,
 
 234 Mass., 480, 125 N. E., 593;
 
 Clark
 
 v.
 
 Beacon Oil Co.,
 
 271 Mass., 27, 170 N. E., 836); diagnosis of cerebral hemorrhage
 
 (Buckminster’s Estate
 
 v.
 
 Commr. of Int. Rev.,
 
 147 F. [2d], 331); report to effect patient had ulcer, chronic prostatitis and seminal vesiculitis
 
 (Adler
 
 v.
 
 New York Life Ins. Co., supra);
 
 pathological record to show that death resulted from venereal 'disease
 
 (Lado
 
 v.
 
 First National Life Ins. Co.,
 
 182 La., 726, 162 So., 579); record that an insured was delirious four hours before an accident
 
 (Globe Indemnity Co.
 
 v.
 
 Rein-
 
 
 *427
 

 hart,
 
 supra); record that patient had a fractured right clavicle
 
 (Wickman
 
 v.
 
 Bohle,
 
 173 Md., 694, 196 A., 326) ; xecord that patient was suffering from “nephritis”
 
 (Kirkpatrick
 
 v.
 
 Wells, Recr.,
 
 319 Mo., 1040, 6 S. W. [2d], 591); record of “moderately advanced tuberculosis” (Co
 
 nlon
 
 v.
 
 John Hancock Mutual Life Ins. Co., supra);
 
 record that patient’s vomitus had odor of whiskey
 
 (Bilodeau
 
 v.
 
 Fitchburg & Leominster St. Ry. Co.,
 
 236 Mass., 526, 128 N. E., 872); record showing unruly behavior of patient and his disobedience of orders of surgeons and nurses
 
 (Ribas
 
 v.
 
 Revere Rubber Co.,
 
 37 R. I., 189, 91 A., 58); and record.of treatment prescribed and statements made by patient concerning his symptoms
 
 (Freedman
 
 v.
 
 Mutual Life
 
 Ins.
 
 Co. of N. Y.,
 
 342 Pa., 404, 21 A. [2d], 81, 135 A. L. R., 1249).
 

 However, certain types of hospital records have been held inadmissible on 'the ground, either that they did not record readily observable facts or conditions or were not kept in the regular course of business for the purpose of the business, or that they were records of opinion and speculation rather than fact. Thus, a hospital record of events or narrations such as those pertaining to the occasion of the patient’s resort to the hospital and having no reference to his medical or •surgical treatment in the hospital has been held, inadmissible. A railroad engineer’s report on an accident was held inadmissible
 
 (Palmer et al., Trustees,
 
 v.
 
 Hoffman,
 
 318 U. S., 109, 87 L. Ed., 645, 63 S. Ct., 477, 144 A. L. R., 719). Hearsay on hearsay such as report given by the patient of details of an accident whiph brought him to a hospital was held inadmissible. See
 
 Schmitt
 
 v.
 
 Doehler Die Casting Co.,
 
 143 Ohio St., 421, 55 N. E. (2d), 644;
 
 Sadjak
 
 v
 
 Parker-Wolverine Co.,
 
 281 Mich., 84, 274 N. W., 719;
 
 Borucki
 
 v.
 
 MacKenzie Brothers Co., Inc., supra.
 

 Some courts hold that records of matters of opinion
 
 *428
 
 or conjecture embodied in psychiatric diagnosis are not admissible as evidence of opinions stated, on the theory that such records cover a field of speculation which should not be protected from the opportunity of cross-examination.
 
 New York Life Ins. Co.
 
 v.
 
 Taylor, supra.
 
 But other courts do not recognize this distinction. A record of diagnosis of “manic depressive insanity” of an accused’s grandmother was held admissible.
 
 People
 
 v.
 
 Kohlmeyer,
 
 284 N. Y., 366, 31 N. E. (2d), 490.
 

 The hospital records admitted in the instant case consisted of the entrance slip, the physician’s directions for the medication to be administered and treatment to be given the patient by the nurses, record of •the analysis of the blood and urine of the patient and the day-to-day charts made and kept by the nurses who had charge of the patient while at the hospital. These charts recorded the food and medicines given and the condition and behavior of the patient to the effect that he was irrational at times; that he left his bed at unreasonable hours; that on one occasion he used a waste paper basket as a commode; and that on several occasions he became unruly. It is the view of the court that, under the state of the law, these records were admissible in evidence and the trial court did not err in admitting them.
 

 The contestees claim also that these hospital records and the testimony of the nurses based thereon were inadmissible in evidence because they contained matters which were privileged as between Weis and his physician and nurses. The contestees claim that the testimony of the nurses was privileged for the reason that some of them were agents of the physician in attendance upon Weis, while others nursed Weis under the physician’s instructions. However, Section 11494, General Code, the privileged-communication statute, being in derogation of the common law, must be strictly construed and must be held to afford protection only
 
 *429
 
 to those relationships specifically named in the statute. A nurse is not included among those named in the statute governing privileged communications. Hence, communications made to her in the performance of her duties are not privileged unless the nurse is also a physician or surgeon.
 
 Prudential Ins. Co. of America
 
 v.
 
 Kozlowski,
 
 226 Wis., 641, 276 N. W., 300;
 
 Southwest Metals Co.
 
 v.
 
 Gomez,
 
 4 F. (2d), 215, 39 A. L. R., 1416;
 
 First Trust Co. of St. Paul
 
 v.
 
 Kansas City Life Ins.. Co.,
 
 79 F. (2d), 48. However, some courts hold that; the privilege may extend to a nurse privately employed by a physician and surgeon and acting for him as his. professional assistant.
 
 Culver, Admr.,
 
 v.
 
 Union
 
 Pac.
 
 Rd. Co.,
 
 112 Neb., 441, 199 N. W., 794. If the privilege is to be extended to nurses who are not physicians, the-change must be made by the General Assembly.
 

 The courts in those states having physician-patient privilege statutes similar to Section 11494, General Code, generally hold that communications between physician and patient, not in the presence of third persons, for the purpose of diagnosis and treatment of the patient, if carried into a priváte hospital record or ehart? remain confidential, and that such part of the chart or record is inadmissible in evidence unless the privilege is waived. 14 Southern California Law Review, 108;
 
 Price
 
 v.
 
 Standard Life & Accident Ins. Co.,
 
 90 Minn., 264, 95 N. W., 1118;
 
 Smart
 
 v.
 
 Kansas City,
 
 208 Mo., 162, 105 S. W., 709, 123 Am. St. Rep., 415, 14 L. R. A. (N. S.), 565;
 
 Toole, Admx.,
 
 v.
 
 Franklin Investment Co.,
 
 158 Wash., 696, 291 P., 1101;
 
 Key
 
 v.
 
 Cosmopolitan Life Health & Accident Ins. Co.
 
 (Mo. App.), 102 S. W. (2d), 797;
 
 Palmer
 
 v.
 
 John Hancock Mutual Life Ins. Co.,
 
 150 Misc., 669, 270 N. Y. Supp., 10;
 
 Mehegan, Exr.,
 
 v.
 
 Faber,
 
 158 Wis., 645, 149 N. W., 397;
 
 Rarogiewicz
 
 v.
 
 Brotherhood of American Yeoman, 242 N.
 
 Y., 590, 152 N. E., 440;
 
 Kaplan
 
 v.
 
 Manhattan
 
 
 *430
 

 Life Ins. Co. of N. Y.,
 
 109 F. (2d), 463;
 
 Eureka-Maryland Assur. Co.
 
 v.
 
 Gray,
 
 121 F. (2d), 104.
 

 The hospital records in the instant case do not contain any diagnosis or report on the condition of the patient by the attending physician or any record of Communications between him and the patient. The hospital records were, therefore, not made incompetent as evidence on the ground of privileged communications. Furthermore, the contestees called the attending physician, a witness to the testator’s will, as a witness at the trial and he testified fully on all matters covered by the hospital records. We think this constituted a waiver of any privilege and the contestees are estopped to claim any. We find no prejudicial error in the record.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Turner, Matthias, Zimmerman and Bell,- JJ., concur.
 

 Sohngen, J., not participating.