Hart, J.
 

 The accused insists that the trial court erred in refusing to grant her motion for judgment on the opening statement of the prosecuting attorney, because the facts stated were insufficient to warrant her conviction, in that the statement did not charge that she committed an abortion and did not state the date or venue of the alleged crime.
 

 The only part of the prosecuting attorney’s statement which tended to connect the accused with the offense charged was as follows:
 

 “Now, I do not believe the evidence will show that Esther Karcher ever out and out admitted the performance of this abortion. I don’t believe the evidence will show that she has been directly named, but I do believe the evidence will show that she was in the house at the time that medical testimony will establish the abortion. She
 
 had an opportunity to perform the abortion-f
 
 that the abortion was not necessary to preserve Alice Bailey’s life, and that Esther Karcher knew that this particular method of causing —or rather knew of this particular method of causing an abortion, and I think the evidence will also conclusively show to you that the woman died after the abortion had been performed.” (Italics supplied.)
 

 Section 13442-8, General Code, provides, in part, as follows:
 

 
 *256
 
 “The trial of an issue upon an indictment or information
 
 shall
 
 proceed before the court or jury as the case may be, as follows:
 

 “1. Counsel for the state
 
 must
 
 first state the case for the prosecution, and
 
 may
 
 briefly state the evidence by which he expects to sustain it.” (Italics supplied.)
 

 If the prosecutor should make an admission of fact which shows that no crime had been committed, or that the accused was not guilty of the crime charged, doubtless the court would be justified in sustaining a motion to discharge the accused. 23 Corpus Juris Secundum, 670. Although there appears to be no decision of this court directly upon this question, that such action of the court would be justified in a proper case may be inferred from the decision of this court in
 
 State
 
 v.
 
 Lowenstein,
 
 109 Ohio St., 393, 142 N. E., 897, 35 A. L. R., 361, wherein it was held that an opening statement by the prosecutor containing facts which would at least constitute prima facie evidence of guilt does not justify the court in taking the case from the jury upon a motion of the accused.
 

 However, in the opinion of this court, an inference could be drawn from the facts stated by the prosecutor in the instant case that the accused was charged with the criminal act for which she was then being put on trial.
 

 The accused also claims error was committed by the trial court in permitting Dr. Ramsayer, one of the physicians attending Alice Bailey, to testify to a certain conversation with her on September 11, 1949, relating to her abortion, on the ground that such communication was both hearsay and privileged and that there was no waiver of the privilege.
 

 Before discussing the declaration of Alice Bailey to Dr. Ramsayer as a claimed privileged communication, a few observations should be made as to the ad
 
 *257
 
 mission in evidence of such declarations generally. In the instant case, the indictment charged the accused with the offense of
 
 procuring an abortion, not the commission of a homicide.
 
 There is no claim here made that the statement of Alice Bailey to Dr. Ramsayer qualified as a dying declaration. The General Assembly has taken cognizance of extrajudicial declarations relating to the crime of abortion in the adoption of Section 12412-1, General Code, which, in part, is as follows:
 

 “And on such trial the
 
 dying declaration
 
 of a woman who dies in consequence of the miscarriage or attempt to produce a miscarriage under investigation, as to the cause and circumstances of such miscarriage or attempt, shall be admissible.” (Italics supplied.)
 

 Prior to the enactment of this section in 1910, the dying declaration of the woman as to an abortion committed upon her was held to be inadmissible in evidence.
 
 State
 
 v.
 
 Harper,
 
 35 Ohio St., 78, 35 Am. Rep., 596. The strong inference is that in the enactment of this statute, the legislative intent and policy, were to validate as proper evidence in abortion cases the dying declaration of the woman upon whom the abortion was committed, but to exclude all other types of declarations on that subject to whomsoever made which did not possess the sanctions supposed to attach to dying declarations. The rule of
 
 expressio unius est exclusio alterius
 
 applies.
 

 The witness, Dr. Ramsayer, was asked to state what history of the illness he obtained from his patient, Alice Bailey. He answered, with objections interspersed, as follows:
 

 “ * * * and I examined the patient on that occasion and found her to be suffering of septic pelvic peritonitis. I asked her what had happened. However, I had' been told — * * *.
 

 
 *258
 
 “However, 1 knew from the history previously obtained certain facts. I asked her what she had done to cause this state of abortion which she was in. She told me — * * *.
 

 “She told me that she thought that she was pregnant, and that she did not want the baby, and that she had gone and had an abortion performed.”
 

 Section 11494, General Code, is, in part, as follows:
 

 “The following persons shall not testify in certain respects:
 

 ‘ ‘ 1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; or
 
 a physician, concerning a communication made to him by his patient in that
 
 relation, or his advice to his patient. But the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject.” (Italics supplied.)
 

 The provisions of the statute are clear and unambiguous to the effect that a physician shall not testify concerning a communication made to him by his patient in that relation, except by express consent of the patient. Aside from the fact that the testimony repeating the conversation between the physician and his patient was, in the instant case, pure hearsay, the accused not being present, there was no express waiver of the privilege by the patient, and consequently the admission of the conversation in evidence was clearly prohibited. 42 Ohio Jurisprudence, 259, 260, Section 257;
 
 Ausdenmoore et al., Exrs.,
 
 v.
 
 Holzback,
 
 89 Ohio St., 381, 106 N. E., 41;
 
 Weis
 
 v.
 
 Weis,
 
 147 Ohio St., 416, 72 N. E. (2d), 245, 169 A. L. R., 668.
 

 “Such statutes are intended to inspire confidence in the patient and encourage him to make a full disclosure to the physician as to his symptoms and conditions, by preventing physicians from making known
 
 *259
 
 to the curious the ailments of their patients, particularly diseases which, if known to exist, bring reproach, criticism, unfriendly comment, or disgrace upon the patient.” 42 Ohio Jurisprudence, 260, Section 257; 58 American Jurisprudence, 233, Section 402. Hence, since the privilege is created for the benefit of the patient, the physician may not testify even in cases where the subject matter of the communication affects third parties.
 

 An exeception to the privileged-communication rule is recognized in many jurisdictions where the communication relates to the promotion or actual commission of a crime. In 8 Wigmore on Evidence, 825, Section 2385, the rule is stated as follows:
 

 ‘ ‘ The privilege, in general, applies as well in criminal as in civil eases; unless the statute expressly limits it to the latter. But in two classes of instances the privilege, though apparently applicable, exhibits its inherent impropriety so plainly that courts have sometimes sought, by main force, to set limits and prevent its evil effects, namely, in cases where the physician is himself a
 
 partaker in the criminal transaction,
 
 and in cases where the physician has acted
 
 on behalf of the victim
 
 of a crime. Courts have chosen various methods, more or less reasonable, of escaping from the dilemma. All that can be said is that an ill-advised initial principle is sure to tempt judges, sooner or later, to do violence to it.”
 

 In 5 Jones Commentaries on Evidence (2 Ed.), 4196, Section 2200, the rule is stated as follows:
 

 “In analogy to the rule that communications to an attorney looking to the commission of a crime or fraud
 
 in futuro
 
 are not privileged, communications to, or advice from, a physician looking to the procuring of an expected abortion or other crime are not privileged. But otherwise the statutes creating the privi
 
 *260
 
 lege usually apply to criminal as well as to civil actions; and the accused may claim, as privileged, communications made by him to his physician in the course •of professional employment. The great weight of authority, however, supports the view that the defendant in a criminal prosecution has no right to object to the testimony of a physician, with respect to the victim of the crime, on the ground of privileged communication.” See, also, annotation, 2 A. L. R. (2d), 647.
 

 But where the victim is also a party to the crime, as for example where the victim has consented to an abortion and survives, it has been held that the testimony of the physician who attended her is inadmissible under the rule of privileged communications. In such a case the objection of the accused is valid and must be sustained.
 
 People
 
 v. Murphy, 101 N. Y., 126, 4 N. E., 326, 54 Am. Rep., 661.
 

 An annotation in 125 A. L. R., 508, dealing with this subject and stating the rule, says:
 

 “The general rule as to the privilege of communication between an attorney and his client is subject to an exception, which is well established, that communications made by a client to his attorney before the commission of a crime, or proposed infraction of the law, for the purpose of being guided or helped in its commission, are not privileged.”
 

 The exact .question here involved has not heretofore been passed upon by this court, but a communication from an accused, charged with the commission of an abortion, to his legal adviser, though not an actual attorney at law, was held privileged in
 
 Benedict v. State,
 
 44 Ohio St., 679, 688, 689, 11 N. E., 125.
 

 In the instant case, the statement of Alice Bailey to Dr. Ramsayer was a post-factum declaration. It had nothing to do with the promotion or future commission of a crime. In view of the fact that the admis
 
 *261
 
 sion in evidence of declarations of a woman who dies in consequence of an abortion or an attempt to produce one is limited by statute to dying declarations, and in view of the strict terms of our statute, making not only the communication to the physician privileged, but the physician an incompetent witness, this court is of the opinion that the declaration of Alice Bailey to her physician was incompetent evidence and its admission in evidence constituted prejudicial error.
 

 The judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court for further proceedings.
 

 Judgment reversed.
 

 Weygandt, C. J., Zimmerman, Stewart, Middleton and Matthias, JJ., concur.
 

 Taft, J., concurs in paragraph two of the syllabus and in the judgment.