The STATE of Ohio, Appellant,

v.

McGRIFF et al., Appellees.

[Cite as *State v. McGriff* (1996), 109 Ohio App.3d 668.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8-94-16.

Decided March 7, 1996.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *James A. Gutierrez*, Assistant Prosecuting Attorney, for appellant.

*R. William Meeks* and *Samuel H. Shamansky*, for appellees.

*Betty D. Montgomery*, Attorney General, and *Anne Berry Strait*, Assistant Attorney General, for *amicus curiae* Betty D. Montgomery.

EVANS, Judge.

This is an appeal by the state from a judgment of the Court of Common Pleas of Logan County ruling on the admissibility of a physician's patient records seized during a search of the physician's office and used to support the indictment of the physician on criminal charges. The trial court ruled, on August 11, 1994, that the state was prohibited from using the patients' medical records as evidence in the case, absent express permission from the patients themselves.

On December 2, 1992, a forty-two-count indictment was filed in Cuyahoga County against Dr. James McGriff and his wife, Renee, charging them with various counts of theft and fraud against health care insurers, and with several counts of illegally prescribing stimulant drugs specifically named in Schedules III(A) and IV(D), R.C. 3719.41. Since Dr. McGriff is a physician in his home county, the entire case was transferred to the Logan County Common Pleas Court, on September 29, 1993. After that court ruled that the state was prohibited from using Dr. McGriff's patient records as evidence of his wrongdoing, the state filed this appeal, asserting the following assignment of error:

"The trial court erred in permitting the defendant-doctor to immunize himself from criminal prosecution by asserting the doctor-patient privilege."

Following our review of the record and the law, we sustain the assignment of error and reverse the judgment of the trial court, for the reasons which follow.

■ In Ohio, the patient is the holder of the physician-patient privilege. A person other than the patient cannot assert the privilege. *Hunter v. Hawkes Hosp. of Mt. Carmel* (1989), 62 Ohio App.3d 155, 157, 574 N.E.2d 1147, 1147–1148. In *Johnston v. Miami Valley Hosp.* (1989), 61 Ohio App.3d 81, 85, 572 N.E.2d 169, 171–172, the Court of Appeals for Montgomery County observed that neither physicians nor hospitals may shield themselves from criminal investigation by asserting the physician-patient privilege, finding:

"Courts have consistently rejected attempts by physicians or hospitals to assert a patient's privilege to hide their own 'criminal' wrongdoing. See *In re Grand Jury Proceedings* (1982) 56 N.Y.2d 348, 452 N.Y.Supp.2d 361, 437 N.E.2d 1118 (rejecting hospital's claim of physician-patient privilege during grand jury investigation of possible crimes committed by hospital staff against patients); *People v. Doe* (Sup.Ct.1981), 107 Misc.2d 605, 435 N.Y.Supp.2d 656 (grand jury investigation of Medicaid fraud)."

Moreover, in *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 541 N.E.2d 602, the Supreme Court of Ohio held that a physician could not invoke the physician-patient privilege to frustrate the State Medical Board's investigation into allegations that the doctor improperly prescribed controlled substances, noting the importance of the public's interest "in detecting crimes in order to protect society." *Id.* at 140, 541 N.E.2d 606, citing *State v. Antill* (1964), 176 Ohio St. 61, 65, 26 O.O.2d 366, 368, 197 N.E.2d 548, 551–552.

■ Pursuant to the cited authorities, properly censored medical records containing evidence of a physician's criminal activity may be utilized as evidence in a criminal prosecution against the doctor. Accordingly, the defendant doctor in this case should not be permitted to invoke his patients' privilege in order to shield himself from prosecution.

■ In support of its Crim.R. 12(J) appeal, the state has certified that it cannot prosecute this case in the absence of information contained in these patients' medical records. Since the defendant has been accused of prescribing controlled substances for improper and illegal purposes and of committing fraud against various health insurance companies, if there is evidence of wrongdoing it will be contained in notations to his patients' medical records. Without these records, the state will be unable to prosecute its case. The relevant and incriminating information, if any, contained in the patient records would be disclosed only to the extent needed to prosecute the defendant. Redaction of the records through erasure or concealment of the patients' names and addresses and other information inapplicable to the prosecution of the charged crimes would ensure that each patient's interest in confidentiality and privacy is protected without frustrating the state's interest in prosecuting illegal drug activity. See

*Miller,* 44 Ohio St.3d at 140–141, 541 N.E.2d at 605–606. Accordingly, in this case the state should be permitted to use the medical records, so long as the trial court conceals the names and addresses of the patients in consideration of their privacy rights. See *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 96, 22 OBR 129, 130–131, 488 N.E.2d 877, 878–879 (nonparty patients' right to privacy recognized).

Therefore, having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the case to that court for further proceedings.

*Judgment reversed*
*and cause remanded.*

HADLEY P.J., concurs.

BRYANT, J., dissents.

THOMAS F. BRYANT, Judge, dissenting.

The majority holds that this court, by judicial fiat, is able to abrogate the physician-patient privilege contained in R.C. 2317.02. In my view, an appellate court may not do so, and accordingly I dissent from the majority's decision.

James McGriff is a physician, and his wife Renee apparently works in his medical office. In September 1992, James and Renee McGriff were indicted by the Cuyahoga County Grand Jury on one count each of R.C. 2913.02, theft, thirteen counts each of health care fraud, R.C. 3999.22, and twenty-eight counts each of drug trafficking, R.C. 2925.03.[1] The charges contained in the indictment fall largely into two groups: (1) McGriff is accused of health care fraud, R.C. 3999.22, by intentionally misrepresenting the actual condition of his patients and thus obtaining money illegally from Blue Cross/Blue Shield, and (2) McGriff is accused of trafficking in drugs by indiscriminately prescribing Schedule IV narcotic stimulants, otherwise commonly known as "speed," in violation of R.C. 2925.03. McGriff's conduct in question relates to his treatment of a large volume of patients for obesity. The state alleges that McGriff was not dispensing bona fide medical treatment for this condition but instead was seeking only to increase his personal wealth by increasing the number of patients in his medical practice and in doing so intentionally misrepresented the actual condition of the patients and prescribed drugs unlawfully.

On August 4, 1993, McGriff filed a motion in the Court of Common Pleas of Cuyahoga County for a change of venue to Logan County. On September 22,

---

1. For brevity and ease of analysis, I hereinafter refer to James and Renee collectively as McGriff.

1993, the Common Pleas Court of Cuyahoga County granted the motion, and the cause was removed to the Court of Common Pleas of Logan County. Thereafter, the state moved to amend the indictment, and on April 4, 1994, the trial court granted the motion in part and denied the motion in part.[2]

On April 20, 1994, the state filed a motion to rule on the admissibility of the patients' medical records. On August 11, 1994, the trial court entered its judgment denying the state's request to use McGriff's patients' medical records as evidence. The trial court held that the records were protected from disclosure pursuant to the physician-patient privilege, R.C. 2317.02, and therefore they were inadmissible as evidence unless the patients waived this privilege. On August 18, 1994, the state filed its notice of appeal pursuant to Crim.R. 12(J). On appeal, the state asserts that only four of the thirty patients in question have waived the privilege, which the state apparently considers to be an insufficient number to prosecute McGriff effectively.

First, I address the procedure employed here. Crim.R. 12 specifies the procedure to be used concerning pleadings and motions before trial.[3] This rule allows a defendant to file a motion *in limine* or a motion to suppress evidence after the state has filed a notice to use certain specified evidence. If a trial court grants a defendant's motion to suppress evidence, the state has an opportunity to appeal that judgment pursuant to Crim.R. 12(J). See, also, R.C. 2945.67. However, in the case at bar, the state, not the defendants, moved the trial court to "[r]ule on the admissibility of the [patients'] medical records" as evidence. In *State v. Davidson* (1985), 17 Ohio St.3d 132, 17 OBR 277, 477 N.E.2d 1141, syllabus, it is stated:

"Any motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress. The granting of such a motion is a final order and may be appealed pursuant to R.C. 2945.67 and Crim.R. 12(J)."

In *Davidson*, the court held that the state could appeal when a motion *in limine* is used as the equivalent of a motion to suppress because "it does not depend on what [the motion] is labeled" but, rather, "on the type of relief it seeks

---

**2.** The state was granted leave to amend counts twelve and fourteen. On April 7, 1994, the state was also granted leave to dismiss counts six through eleven and count thirteen. All of the counts amended and dismissed relate to health care fraud.

**3.** Although Crim.R. 12 has been recently amended, effective July 1, 1995, our reference here is to Crim.R. 12 as it existed when this case arose prior to the amendment.

to obtain." *Id.* at 135, 17 OBR at 280, 477 N.E.2d at 1144. See, also, *State v. Malinovsky* (1991), 60 Ohio St.3d 20, 573 N.E.2d 22.

Here, the state filed its notice of appeal pursuant to Crim.R. 12(J). Hence, the state is certifying that this appeal is not taken for purposes of delay and that its case against McGriff is rendered "so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." See Crim.R. 12(J). Because the trial court's judgment determined that the state could not use these records without waiver by the patients, most of whom have not waived their privilege, and because of the state's certification that it cannot reasonably proceed without using these patients' medical records as evidence, the effect of the judgment is to suppress evidence that the state would otherwise use. Therefore, I deem this a final appealable order and address the merits of this appeal. See *Davidson, supra.*

The state's assignment of error is:

"The trial court erred in permitting the defendant-doctor to immunize himself from criminal prosecution by asserting the doctor-patient privilege."

Essentially, the state argues that the trial court erred by holding that it could not use the medical records of thirty of McGriff's patients unless the patients in question waive their physician-patient privilege. The state seeks to use the patients' medical records to prove that McGriff's conduct of treating certain patients for obesity and prescribing for them certain medication was not in accordance with bona fide medical treatment pursuant to Revised Code Chapters 3719 and 4731. See R.C. 2925.03, which exempts physicians acting in accordance with these chapters. See, also, *State v. Sway* (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, and *State v. McCarthy* (1992), 65 Ohio St.3d 589, 605 N.E.2d 911. Apparently, the state will also use these records to attempt to prove the elements of R.C. 3999.22, health care fraud.

The question confronting this court is whether the trial court erred by holding that the state cannot use the medical records of certain patients of McGriff's unless the patients waive their physician-patient privilege. For the reasons that follow, I believe that the trial court did not err in this matter.

R.C. 2317.02(B), the physician-patient privilege statute, stated as follows:

"The following persons shall not testify in certain respects:

" * * *

"(B)(1) A physician * * * concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided in this division and division (B)(2) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial

privilege under this division, the physician may be compelled to testify on the same subject.

"The testimonial privilege under this division is waived, and a physician * * * may testify or may be compelled to testify in a civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code, under the following circumstances:

"(a) If the patient or guardian or other legal representative of the patient gives express consent;

"(b) If the patient is deceased, the spouse of the patient or his executor or administrator of his estate gives express consent;

"(c) If a medical claim * * * as defined in section 2305.11 of the Revised Code, an action for wrongful death, any other type of civil action, or a claim under Chapter 4123. of the Revised Code is filed by the patient, the personal representative of the estate of the patient if deceased, or his guardian or other legal representative.

" * * *

"(3) As used in divisions (B)(1) and (2) of this section, 'communication' means acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician * * * to diagnose, treat, prescribe, or act for a patient. A 'communication' may include, but is not limited to, any medical * * *, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis."

The purpose of the physician-patient privilege statute is to protect the privacy of patients in order to ensure open and full disclosure to the physician without fear that those communications will later become public. *State v. Karcher* (1953), 155 Ohio St. 253, 44 O.O. 258, 98 N.E.2d 308, and *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548 (where the court expressly found *no* violation of the physician-patient privilege statute but seemed willing to apply a balancing test to the application of the privilege). It has been noted that the privilege statute *is to be strictly construed, as it is in derogation of the common law,* which afforded no such privilege. *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245. Although the patient is the holder of the privilege, I believe a physician is bound to uphold a patient's desire to keep certain information confidential. If a patient does not waive the physician-patient privilege, his or her physician may not disclose any privileged communications made during that relationship, subject of course to any statutory exceptions that may apply. See R.C. 2317.02 and 4731.22(C)(1).

The case *sub judice* is unique in Ohio. This court has been unable to locate a case where the issue was whether the state, in a criminal prosecution, could use a physician-defendant's patient medical records to show that the physician was not acting in accordance with the Revised Code. In short, the physician-patient privilege has not been raised in the context now before us. However, prior Ohio Supreme Court decisions have provided some guidance.

In *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672, paragraphs one and two of the syllabus, the Supreme Court of Ohio stated:

"1. Courts may not create a public policy limitation upon the physician-patient privilege in order to allow otherwise clearly inadmissible evidence to be received . in drunk driving cases.

"2. Because the law of privilege is substantive in nature, the Supreme Court is not free to promulgate an amendment to the Rules of Evidence which would deny a statutory privilege in drunk driving cases."

*Smorgala* also stated, 50 Ohio St.3d at 223 and 225, 553 N.E.2d at 674 and 676:

"Where the words of a statute are free of ambiguity and express plainly and distinctly the sense of the lawmaking body, the courts should look no further in their efforts to interpret the intent of the General Assembly. Here it is clear that the legislature has stated that the privilege is to be given effect absent specific statutory exceptions, none of which applies to this case."

"If the admission of evidence, *i.e.*, the hospital-ordered blood test, is a purely procedural matter, the court would arguably be free to pronounce an appropriate rule without usurping a legislative function. A review of Evid.R. 501 dispels any hope that such an approach will be helpful. Evid.R. 501 reads in its entirety:

" 'The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in light of reason and experience.'

"The rule clearly states that the matter of privilege is controlled by statute or common law. This rule removes the matter of privileges from the operation of the Rules of Evidence. See Staff Note (1980), Evid.R. 501.

" * * * The Staff Note to Evid.R. 501 echoes a similar concern over the substantive nature of the law of privilege. The note states that by adopting by reference privilege statutes and common-law constructions, the direct confrontation of questions of what is procedural and what is substantive was avoided.

"Because the law of privilege has been determined to be substantive in nature, this court is not free to propose an amendment to the Rules of Evidence which would deny the privilege in drunk driving cases. Likewise, since the legislature has enacted a specific statutory provision in R.C. 2317.02(B) to establish and control the physician-patient privilege, there is no vacuum within which we can proceed by common-law pronouncement." (Footnote omitted.)

Thus, in *Smorgala*, the Supreme Court of Ohio determined that the physician-patient privilege, R.C. 2317.02 is substantive in nature and also that because the legislature established this privilege, it also controls its application. Hence, the court in *Smorgala* stated that the courts of Ohio are unable to judicially create a waiver of the privilege.[4] In apparent response to *Smorgala*, the General Assembly enacted legislation, effective October 29, 1993, Am.S.B. No. 121, 145 Ohio Laws, Part I, 1095, carving out an exception to the physician-patient privilege by allowing law enforcement officials to obtain the alcohol-content test results of a physician's patients. See R.C. 2317.02(B)(1)(b). See, also, the amendment to R.C. 2317.02 effective December 9, 1994, Am.Sub.H.B. No. 335, 145 Ohio Laws, Part III, 5451, 5459.[5]

In *In re Miller* (1992), 63 Ohio St.3d 99, 109, 585 N.E.2d 396, 404 (a civil commitment proceeding of an alleged mental incompetent where the trial court permitted the patient's physician to testify), the Ohio Supreme Court stated:

"Since R.C. 2317.02(B) provides that communications between physician and patient are confidential, it is in derogation of the common law and must be strictly construed. *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245, paragraph four of the syllabus. The statute is worded so that the privilege applies unless it is waived, and then goes on to list the three instances when waiver occurs. See R.C. 2317.02(B)(1). If the situation does not meet one of the waivers expressly set forth in the statute, the privilege is not waived. *State v. Smorgala*, 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 674. See *State ex rel. Lambdin v. Brenton* (1970), 21 Ohio St.2d 21, 50 O.O.2d 44, 254 N.E.2d 681. With that in mind, we find that appellant has not expressly waived the privilege; R.C. 2317.02(B)(1)(a) does not apply. Since appellant is not deceased, R.C. 2317.02(B)(1)(b) can not apply. And since appellant has not *filed* any type of civil action to place his own physical condition at issue, no R.C. 2317.02(B)(1)(c) waiver

---

4. See *Smorgala*, 50 Ohio St.3d at 224, 553 N.E.2d at 674–675, where the court addresses *State v. Dress* (1982), 10 Ohio App.3d 258, 10 OBR 372, 461 N.E.2d 1312. In *Dress*, the court created a judicial waiver of the physician-patient privilege in a drunk driving case.

5. These two amendments to R.C. 2317.02 have no substantive impact on the case *sub judice*. Our analysis of R.C. 2317.02 is of its former version because the institution of this case, as well as the trial court's judgment, was prior the effective date of these amendments.

has occurred. Lastly, the facts of this case are not so compelling that a judicially created waiver must be invoked." (Emphasis *sic.*)

Although *In re Miller* differs from *Smorgala* in that the former suggests that a case with compelling facts may allow for a judicially created waiver of the physician-patient privilege, I am not able to unequivocally state that an appellate court may create by judicial fiat an exception to the physician-patient privilege when the enacting of such an exception has historically been left within the province of the legislature. Despite *Smorgala* having been decided prior to the October 29, 1993 amendment of R.C. 2317.02, I believe its rationale is as applicable now as it was prior to the amendment. The Ohio Supreme Court's rationale in *Smorgala* and *In re Miller* and the General Assembly's original action in enacting the privilege statute in the first instance, and then later amending it to include an additional exception to its application, show that both the judicial and legislative branches of our state government have interpreted R.C. 2317.02 in a way that leaves no doubt that only the legislature can create an exception to the application of the privilege statute. In other words, the substantive application of the privilege statute, including any exceptions to that application, is left to the state legislature, subject possibly only to action by the federal government. As Justice Alice Robie Resnick stated in *In re Miller,* "[T]he statute is worded so that the privilege applies unless it is waived, and then goes on to list the three instances when waiver occurs." *Id.* at 109, 585 N.E.2d at 404.

Another example of the legislature's control of the physician-patient privilege is found in *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 541 N.E.2d 602. In *Miller,* the Supreme Court determined that a physician under investigation by the Ohio State Medical Board could not prevent the production of his patients' records when the legislature had enacted a specific exception to the application of the privilege to allow such production. See R.C. 4731.22(C)(1). I believe this case also shows that it is the legislature's sole province to create an exception to the privilege statute.

*State v. Antill, supra,* is an early Supreme Court decision related to the issue here. In *Antill,* the defendant was on trial for battering his wife and the trial court permitted the treating physician to testify. Although the Supreme Court seemed willing to apply a balancing test between having a patient's condition remain confidential and society's interest in detecting crimes, the court expressly found that there was *no* violation of the physician-patient privilege. While the *Antill* decision may seem attractive for application to the case at bar, I do not find the court's simple willingness to apply a balancing test a definitive statement

on the substantive application of the law of privilege, especially in light of the recent Ohio Supreme Court decisions in *Smorgala* and *In re Miller* interpreting R.C. 2317.02.

Here, the state claims that it is not "requesting this court to make a public policy exception as to abrogate the privilege. What the State is requesting is a procedure by which the interest of the patient is protected as well as the interest of the State to prosecute." The state suggests that the purpose of the physician-patient privilege statute can be achieved by redacting the patients' medical records to delete information that might identify the patients.

I deem this suggestion unworkable and an invasion of the privilege as well as a blatant attempt to circumvent the application of the statute.

To allow the state to delete any identifying information contained in these patients' medical records would necessarily breach the physician-patient privilege without authority to do so. At least one person (the prosecutor) and more likely three persons (prosecutor, defense counsel and trial judge), if not more, would have to examine the contents of each patient's medical record to determine what is to be deleted and what is to be shown as evidence. Further, any information not deleted and subsequently used at trial by the state is still information protected by the privilege. Finally, to delete some items in the records does not guarantee that these patients will not be identified when the remainder of their medical records are used at trial.

I must note that I wholeheartedly agree with the majority when it states that the patient holds the privilege, and not the physician. This is the very reason why I agree with the trial court's judgment and believe that this court may not invade the privilege. Indeed, the state has acknowledged that the vast majority of the patients solicited for waiver have refused to waive the privilege. Thus, the patients themselves have asserted the privilege, not McGriff. Apparently, the state wishes to avoid further refusals to waive by a court order that waiver is unnecessary. However, I must reiterate that the patients themselves are the ones who decided that they did not wish their medical records revealed for use by the state. It is also instructive to note that the majority cites and quotes *Johnston v. Miami Valley Hosp.* (1989), 61 Ohio App.3d 81, 572 N.E.2d 169, wherein the Court of Appeals for Montgomery County refused to extend the physician-patient privilege to allow a litigant in a civil proceeding to use confidential patient medical records, stating that "[a]ppellant must look to the legislature for the relief she seeks." Further, the majority quotes that portion *Johnston* that cites the application of New York's physician-patient statute, CPLR 4504. New York's physician-patient statute, and its application, is different from our

Ohio physician-patient statute, and, of course, New York law has no bearing on the substantive application of the Ohio physician-patient privilege.

While I am well aware that a physician should not be allowed to assert the physician-patient privilege to obstruct criminal proceedings against him, the authorities cited above lead me to conclude that this court is not able to create an exception to the physician-patient privilege. I am also mindful of the troublesome fact that patients that seek bona fide treatment from a physician who indeed is engaged in the illegal practice of medicine are themselves victims of that physician. However, there is no evidence that that is the case before this court.

In any event, it is my view that current Ohio law requires that if the state seeks to use the medical records of a nonparty patient in order to prosecute that patient's physician, the state must first obtain a waiver of the privilege by that patient. Any other solution must be crafted by the legislature or, possibly, by the Supreme Court. As aptly stated by the Supreme Court of Minnesota in *State v. Staat* (1971), 291 Minn. 394, 397, 192 N.W.2d 192, 196:

"* * * Despite persistent academic and judicial criticism of this evidentiary privilege [*i.e.,* the physician-patient privilege] as an impediment to the ascertainment of truth, it is nevertheless our duty to enforce it to the full extent reasonably necessary for the attainment of the longstanding legislative policy for which it was created, namely, to provide a shield for safeguarding and promoting confidential communications between a patient and his attending physician." See, also, *id.* at fn. 2, citing *State v. Karcher, supra,* 155 Ohio St. 253, 44 O.O. 258, 98 N.E.2d 308.

Accordingly, I would find appellant's assignment of error not well taken and would affirm the trial court's judgment.