Samuel VARGHESE, Plaintiff,

v.

**ROYAL MACCABEES LIFE
INSURANCE COMPANY,
Defendant.**

No. C–1–95–699.

United States District Court,
S.D. Ohio,
Western Division.

Jan. 27, 1998.

Leo Joseph Breslin, Lindhorst & Dreidame—1, Peter Stautberg, Lindhorst & Dreidame Co, Ann T Hunsaker, Cincinnati, OH, for Plaintiff.

Gary M. Glass, Thompson Hine & Flory, Cincinnati, OH, for Defendant.

## ORDER

TIMOTHY S. HOGAN, United States Magistrate Judge.

This matter came before the Court for a status conference on December 2, 1997. Following the conference, the Court issued an Order requiring Plaintiff to produce various medical records from his practice subject to certain limitations. (Doc. 38). Pursuant to that Order, Defendant has submitted its proposed plan for the production of the medical records. (Doc. 41). Plaintiff, however, requests that the Court reconsider its prior Order and find that the patient records are privileged. (Doc. 39). The Court revisits its prior ruling for the purpose of clarification only.

## BACKGROUND

Defendant is seeking discovery of certain documents contained within the medical records from plaintiff's practice. Defendant claims these documents are critical to its understanding of the substantial and material duties of plaintiff's medical practice. In July 1997, plaintiff allowed defendant to inspect and index said documents in order to evaluate the cost of having certain documents copied for production. Because some of the records contain patients' names, the parties attempted to devise an arrangement for copying the documents with the names of the patients and other identifying information redacted. Since that time, plaintiff has become unwilling to produce the documents for copying because he claims that there is no possible way to protect the confidentiality of his former patients. Moreover, plaintiff contends that the computer summary it has since acquired, and is willing to produce to defendant, contains all the information which is contained in the medical records with the exclusion of the patients' names.

Defendant mistrusts plaintiff's representations for several reasons and wants the production of both the computer summary and the actual records. Defendant's mistrust is based on certain inconsistencies between plaintiff's testimony and documents produced through subpoenas. More specifically, defendant contends that both plaintiff and plaintiff's office manager testified that no such computer records existed regarding procedures performed and the amounts billed during the pertinent time period. However, plaintiff has recently informed defendant that such computer records could be retrieved from a source in Toledo. Defendant also submits that plaintiff testified that he had never been terminated by any insurance providers. Yet, through responses to subpoenas, defendant has learned that plaintiff was terminated by nearly every major insurance provider immediately prior to the cessation of his practice. These inconsistencies have lead defendant to doubt the veracity of the computer summaries, generated by plaintiff, regarding his practice. Defendant asserts that it is not interested in any information regarding the patients' identities and is willing to pay for that information to be redacted from the records prior to their production.

## OPINION

Pursuant to Rule 501 of the Federal Rules of Evidence, where State law provides the rule of decision as to an element of a claim or defense, privilege is to be determined in accordance with State law. Thus, as a diversity action, we are concerned with the rule of privilege in Ohio. *See Jewell v. Holzer Hosp. Foundation Inc.*, 899 F.2d 1507, 1513 (6th Cir.1990). In Ohio, the physician-patient privilege is statutory. O.R.C. § 2317.02(B)(1) provides, in pertinent part, that any "communication made to [a physician] by his patient in that relation or his advice to his patient" is privileged. "Communication" has been held to include medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis or prognosis. O.R.C. § 2317.02(B)(4)(a).

Defendant's proposal calls for the redaction of names, addresses and social security numbers of Plaintiff's patients. Defendant argues that the vast majority of courts have held that disclosure of non-party medical records does not violate the privacy or confidentiality concerns of the patients if adequate safeguards are provided to protect the identi-

ty of patients. Defendant cites to one Ohio authority in support of its argument. *State v. McGriff,* 109 Ohio App.3d 668, 672 N.E.2d 1074 (1996). In *McGriff,* plaintiff was prosecuted for insurance fraud and illegally prescribing stimulants. The court held that without the patients' medical records, the state would be unable to prosecute its case. Therefore, it ordered the records be produced with the names, addresses and identifying information of the patients redacted to ensure the patients' confidentiality. *Id.* at 1075–76.

■ Plaintiff argues that merely attempting to "obscure" the patients' names and identifying information is insufficient as it does not protect the "communication" and "advice" made privileged by the statute. Therefore, Plaintiff insists that production of the requested documents is impossible. In support of his argument, Plaintiff cites to several Ohio court opinions which seem to indicate a general distaste for disclosure of medical records absent a waiver by the patient. *See Humphry v. Riverside Methodist Hospital,* 22 Ohio St.3d 94, 488 N.E.2d 877 (1986); *Weis v. Weis,* 147 Ohio St. 416, 72 N.E.2d 245 (1947); *Wozniak v. Kombrink,* No. C–89053, 1991 WL 17213 (Ohio App. 1 Dist. Feb. 13, 1991). The Court is not convinced, however, that O.R.C. 2317.02, as well as the accompanying case law, constitutes an absolute bar on the disclosure of certain medical documents. Rather, disclosures can be made but must be constrained by the statute's definition of "communication."

While the non-party patients' privacy rights are paramount, the Court believes that the records can be produced without infringing upon those rights. Plaintiff relies heavily upon an unreported Ohio Appellate Court opinion for its argument that the records are totally privileged and cannot be produced. In *Wozniak,* the court held that the medical records sought contained diagnoses which constituted "communications" under O.R.C. § 2317.02(B)(3). Accordingly, the court determined that since the risk of disclosing the

patient's identity could not be entirely eliminated by the masking of a patient's name or identifying personal data [1], the risk of disclosure outweighed the benefits that might be enjoyed by the plaintiff were he allowed access to the information. Thus, the court reversed the trial court's decision allowing the production of the medical records. 1991 WL 17213 at *5. However, *Wozniak* can be distinguished on its facts from the present case. In *Wozniak,* plaintiff sought the records of all Independent Medical Exams performed by defendant's expert witness over a twenty-four month period. Plaintiff's purpose in requesting these records was to impeach defendant's expert witness. Furthermore, the court indicated that it was troubled by the lack of explicit instructions in the trial court's order defining what must be done to protect the identities of the non-party patients. *Id.* at *3.

■ Although *McGriff* was a criminal prosecution, the Court finds its rationale more analogous to the present case. At issue in the present case are the substantial and material duties involved in Plaintiff's regular occupation upon which he has premised his disability claim. Plaintiff contends that he was an otolaryngological surgeon, specializing in laser micro-surgery and other highly skilled procedures. In order to determine whether Plaintiff is unable to perform any or all of the substantial and material duties of his job, Defendant must necessarily determine what those duties were. In filing the present action, plaintiff put this at issue. Thus, to permit him now to hide behind the physician-patient privilege would greatly impair Defendant's ability to defend itself.

Early in this litigation, Defendant sought the production of documents which detailed the surgeries or office work Plaintiff performed from 1988 to the present. Initially, Plaintiff indicated that he may have destroyed all such documents but that he had retained his billing records. Defendant asserts that Plaintiff then stated that the billing records, which were computer generated,

---

1. We cannot imagine any "unique juxtaposition" of circumstances which would allow a patient's identity to be ascertained absent the names, addresses and other identifying information. However, as we find that Defendant's ability to defend itself rests on the information contained in these records, the benefits far outweigh such a minute risk of disclosure.

were purged from his database. Defendant continued to press for the information via patient records. Subsequently, Plaintiff informed Defendant that a computer printout could be obtained detailing Plaintiff's surgeries, office work, the amounts charged for the services or the actual income received. Defendant, naturally, doubts the veracity of said printout and requests the patient records and files in addition. As there is no other less intrusive means of verifying the accuracy of the computer printout, the Court finds that the patient records and files are indispensable to Defendant's case. Thus, the Court maintains it original view on the production of the requested documents and orders that Plaintiff produce the documents, albeit, subject to strict guidelines.

■ Defendant maintains that it is not interested in acquiring any information about the identity of Plaintiff's patients. However, since the physician-patient privilege applies to more than merely the patients identity, namely any communication made to a physician by his patient in that relation or a physician's advice to his patient, this information too must be redacted. Central to this case is the issue of what surgeries or office work Plaintiff performed in 1988 on a daily basis. Thus, Plaintiff's patients' background histories, symptoms, and diagnoses are irrelevant and shall be redacted from the records. To the extent that a specific surgical procedure would necessarily reveal a patient's diagnosis, this too shall be redacted and it shall be indicated above the redaction that a surgical procedure was performed.

■ Defendant requests that a paralegal from its counsel's office be retained to select the requested documents for copying and to redact the names, addresses, and social security numbers of plaintiff's patients appearing on any of the documents. Moreover, Defendant would also prefer to retain a copy company with which its counsel is familiar and from whom it can obtain the best copying rate. In the alternative, Defendant requests that, if the Court allows Plaintiff to retain its own paralegal and copy company, it should not have to bear greater expense than it would otherwise have incurred had it employed its own paralegal and copy company.

Plaintiff, on the other hand, states that he would agree to deliver the documents, if ordered to do so, to an attorney for processing. Plaintiff contends that this attorney should practice in the area of health care law and be familiar with the physician-patient privilege and would process the records in a manner consistent with O.R.C. § 2713.02(B)(1) to insure that no privileged information is revealed. It goes without saying that Plaintiff insists that this be done at Defendant's expense.

■ The Court finds Plaintiff's proposal to be the most expedient and equitable solution. In requesting this information, Defendant has stated on several occasions that it was willing to pay for the production of these documents. However, as the cost of production necessarily will increase with the employment of an attorney, not a paralegal, to process the documents, the Court finds that equity dictates that the parties share the costs of producing, "processing," and copying the requested documents. This is, by no means, a comprehensive plan for the production of the requested documents. It is merely intended as a framework by which the parties can structure a plan for the production of the documents. For this reason, the Court orders the parties to submit a JOINT protective order, within thirty (30) days, detailing with specificity 1) the information to be redacted as well as the manner in which surgical procedures and office visits will be identified without violating O.R.C. 2713.02(B)(1); 2) the name of a mutually agreeable attorney to handle the processing of the medical documents; and 3) the expected fees involved for the selected attorney and the expected costs of copying said documents.

**IT IS THEREFORE ORDERED THAT:**

1) Plaintiff and Defendant SHALL JOINTLY SUBMIT, WITHIN THIRTY (30) DAYS, a Joint Protective Order consistent with the opinion herein.

3) Plaintiff SHALL DELIVER the requested documents to the attorney WITHIN TEN (10) DAYS of the selection of said attorney.

4) Once the requested medical documents have been "processed," said documents

SHALL BE DELIVERED to Defendant WITHIN TEN (10) DAYS THEREAFTER.

SO ORDERED.