[Cite as *State v. Sewell*, 2018-Ohio-2027.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27562 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-3390 |
| | : | |
| KENNETH L. SEWELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of May, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ENRIQUE G. RIVERA-CEREZO, Atty. Reg. No. 0085053, 61 North Dixie Drive, Suite B, Vandalia, Ohio 45377
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} This case is before us on the appeal of Defendant-Appellant, Kenneth Sewell, from his conviction and sentence for robbery, following a bench trial.   In support of his appeal, Sewell contends that the court erred in denying his motion for acquittal under Crim.R. 29(A), and that his conviction was against the manifest weight of the evidence.   Sewell further contends that he received ineffective assistance of counsel when his trial counsel failed to request a bill of particulars and failed to cross-examine a key State witness.

{¶ 2} We conclude that the trial court did not err in denying Sewell's motion for acquittal.   Sewell had notice of the robbery charge against him pursuant to the indictment, and the State did not commit to a specific theory of the case during opening statement with respect to whether the underlying theft offense for robbery was of a backpack or of a lighter, or both.   Furthermore, during its case, the State presented sufficient evidence to prove that Sewell had intent to deprive the victim of a lighter, and that Sewell caused physical harm to the victim as he committed the theft or was fleeing immediately after the theft.   The State also did not change its theory of the case during trial.

{¶ 3} We further conclude that the conviction for robbery was not against the manifest weight of the evidence.   The trial judge was the fact-finder and found the victim credible.   In contrast, the trial judge did not find Sewell credible.   We defer to the trier of fact on credibility issues, and there was no manifest miscarriage of justice.

{¶ 4} Finally, trial counsel did not provide ineffective assistance of counsel. Assuming for purposes of argument that trial counsel should have filed a motion for a bill

of particulars, there is no reasonable probability that the result of the trial would have been different. Sewell did not deny striking the victim; his defense was that the lighter that was allegedly taken belonged to him. However, the trial court did not find Sewell credible. In addition, trial counsel did not provide ineffective assistance by discontinuing his cross-examination of the victim with respect to ownership of the lighter. While the victim had a hearing problem and some difficulty in communicating, he clearly indicated the facts as to his ownership of the lighter during both direct and cross-examination. Moreover, in view of the trial court's credibility decisions, there is no reasonable probability that the result of the trial would have been otherwise if counsel had persisted. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 5} On February 2, 2016, an indictment was filed charging Sewell with one count of robbery (physical harm), in violation of R.C. 2911.02(A)(2), a second degree felony. Sewell pled not guilty to the charge in September 2016, and trial was ultimately set for March 28, 2017. On the day of trial, Sewell filed a waiver of jury trial, and the court conducted a bench trial.

{¶ 6} At trial, the State presented testimony from the following individuals: two employees of the Greater Dayton Regional Transit Authority ("RTA"); the director of security for the Schuster Center; the alleged victim of the robbery; and two officers of the Dayton Police Department ("DPD"). The evidence that the State presented indicated that on November 4, 2015, Amy Davis was working as a transit ambassador for the RTA and was stationed at the Wright Stop Plaza (also called the "Hub") in downtown Dayton,

Ohio. As part of her duties, Davis walked around the Hub helping people get on buses and seeing to passenger safety. She also walked along the street in the general area to make sure no one was smoking against the RTA building.

{¶ 7} On November 4, 2015, Davis was watching a group of four people who were huddled together on the platform and were acting a little strange. These four individuals were later identified as Kenneth Sewell and three of his friends, Deonte, Adara, and Tion. At the time, Sewell was wearing turquoise scrubs, Deonte was wearing a black hat, and Adara had on a red Ace Hardware vest.

{¶ 8} Davis followed these four individuals as they walked away from the platform and down Main Street, toward Third Street. While they were walking down Main Street, Davis saw the group encounter an older man and begin to converse. The older man was Stanley Rutlin, and he was wearing a black backpack. Davis knew Rutlin by name because he was a regular at the Hub. Although Rutlin was deaf, Davis was able to communicate with him because Rutlin could read lips. Davis could not tell what the people were saying, but she saw one of the individuals (not Sewell) holding something above Rutlin's head, and saw Rutlin trying to get the object from that person. Davis stated that the individuals were holding something away from Rutlin.

{¶ 9} After this occurred, Davis saw Sewell and Rutlin circling each other. Rutlin set his backpack down, and he and Sewell began throwing punches at each other. Davis saw Sewell hit Rutlin in the mouth and saw Rutlin attempt to hit Sewell, but Rutlin never actually made contact. At that point, Davis called Gerry Gustin, who was the RTA manager of safety and security, to let him know there was a fight on the corner of Third and Main Streets. She also alerted RTA dispatch, because some DPD officers were

specifically assigned to the Hub.

{¶ 10} Davis saw Sewell grab a backpack and run across Third Street. As soon as Gustin received Davis's call, he ran out the Third Street doors of the Hub. Davis pointed to an individual wearing turquoise scrubs (Sewell), who was going down the sidewalk holding what appeared to be a book bag. Gustin ran after Sewell and made eye contact with him. Sewell turned north through a parking lot and then ran up an alley that went back towards Main Street. During the pursuit, Gustin fell off a little concrete wall, and by that time, Sewell had a good lead. Gustin also had a muscle disease and did not have good running abilities.

{¶ 11} Gustin could see Sewell across Main Street, going in the direction of the Schuster Center. However, when he looked up again, Sewell was gone. While running in the direction where he had last seen Sewell, Gustin happened on an alley that went down to the Schuster Center. The alley contained an open entrance into a parking garage. After entering the garage, Gustin saw some items that looked like they had been dumped on the ground, but did not touch them. He then went up an elevator and exited on the ground floor of a building (Performance Place) that is located next to the Schuster Center and contains apartments and offices. The elevator that Gustin took did not contain any discarded items, but Rutlin's backpack was later found in an elevator at the Schuster Center. Gustin had no further contact with Sewell.

{¶ 12} There are camera security systems in the Schuster Center, at the Arts Garage on Ludlow Street, at the Victoria Theater, and at Performance Place, which is the tower that houses residences and some law offices. After speaking with a police officer on November 4, 2015, Braxton Gilkey, the director of security for the Schuster Center,

checked the security footage for the Performance Place alley and garage. Gilkey then made two still photos. One photo was of a man in turquoise clothing in the alley next to Performance Place, and the other was of a man in turquoise clothing inside the lower level of the parking garage. Because the camera revolved, Gilkey had to capture a picture of the man when he was in view of the camera.

{¶ 13} Rutlin also testified, and there was some difficulty in understanding him because he was deaf. Rutlin stated that on November 4, 2015, he was at the RTA Hub and was walking downtown, on Third and Main Streets. He was walking with someone and talking, but that person left to go to work. Subsequently, Sewell and his friends came up to Rutlin, and one of Sewell's friends (later identified as Deonte) asked to use Rutlin's lighter. Rutlin gave Deonte the lighter to use, but Deonte did not give it back. Sewell then took the lighter from Deonte and also did not give it back. Rutlin told Sewell to give him back his lighter, but Sewell would not give it back. Sewell kept moving around. Sewell then put up his fists. When Sewell did that, Rutlin took off his backpack and put it down next to him. He told Sewell to "come on and do this," because Sewell would not give him back his lighter. Sewell then hit Rutlin in the face with his fist. Rutlin stated that Sewell hurt him and that he had a sore inside his mouth as a result.

{¶ 14} After Sewell hit Rutlin, Sewell was running around and took Rutlin's backpack. Rutlin saw Sewell running over the streets, by a bank, and through a parking lot. The police then came and put Rutlin in a cruiser. They also chased Sewell. Rutlin did not see Sewell again, but the police later returned the backpack, and nothing in the backpack was missing. Rutlin further stated that he had purchased the lighter at a store and had not been near Riverscape that day.

{¶ 15} Shaun Olinger, a DPD officer, was assigned to the RTA Hub on an overtime contract on November 4, 2015, and was working with another DPD officer patrolling the block encompassed by the RTA. At about 1:30 p.m., Gustin told Olinger that a robbery had taken place and that a gentleman had taken off with a backpack. Olinger received a description that the man was dressed in blue scrubs and was going northbound, which would be up toward Main Street. After retrieving his patrol car, Olinger traveled westbound onto Third Street toward Main Street. When Olinger reached Ludlow Street, he saw a man (later identified as Sewell), and assumed Sewell had seen his cruiser, because Sewell took off at a dead sprint. Sewell was in the area of Second Street and Ludlow Street, about a block away. Because Ludlow was a one-way street, Olinger activated his lights and went the wrong way on Ludlow to pursue Sewell. He then apprehended Sewell at 34 West Second Street, near Boston Stoker.

{¶ 16} When Olinger first saw Sewell, Sewell did not match the original description, as he was not wearing turquoise or blue scrubs; he was wearing black pants and a black shirt. Olinger stated that it was obvious that Sewell had been running – and not just from seeing Olinger, as Sewell was sweating and had an elevated heartbeat.

{¶ 17} After Olinger apprehended Sewell, an additional call was received from the Schuster Center, where a backpack had been found. Subsequently, Olinger met with Rutlin, who confirmed that nothing was missing from the backpack. Olinger then returned the backpack to Rutlin.

{¶ 18} On November 5, 2015, DPD Detective Doug Hall became aware of the robbery. Hall met with the alleged victim, Rutlin, who explained what had happened. Hall took photos, which demonstrated a cut, abrasion, and some redness inside Rutlin's

mouth. Hall then went to the jail, where Sewell was being held on a robbery charge. After Sewell's rights were read to him, Sewell indicated he was willing to talk. Sewell told Hall that he had missed an appointment the previous day and had decided to hang out at the RTA with some friends. According to Sewell, Rutlin was badgering Sewell and his friends and wanted a lighter. Sewell stated that he kept telling Rutlin no, that he was not going to give him a lighter. Eventually, they engaged in a fight, with Rutlin taking the first swing. As a result, Sewell decided to defend himself.

{¶ 19} Sewell indicated he had taken the backpack to get Rutlin to stay away from him. He said he had not taken anything from the backpack and had discarded it somewhere.

{¶ 20} After speaking with Sewell, Hall viewed videos of the incident obtained from RTA cameras and police cameras, and spoke with RTA employees, including Davis and Gustin. He also obtained a couple of still photos from Gilkey. At trial, Hall indicated that Sewell had property in his possession when he was arrested. Hall was most concerned with any cigarette lighters. Sewell had said he had two lighters when he came into the jail, and two separate lighters had been logged into the property room. Hall took pictures of two BIC lighters that he recovered from the property room after questioning Sewell.

{¶ 21} After the State rested, Sewell moved for a Crim.R. 29(A) acquittal, alleging that the State failed to present the lighter theft as a basis for the robbery charge during opening statement. Sewell also maintained that the alleged theft of the backpack could not sustain a robbery conviction because of the lack of evidence that physical force was used in connection with the backpack. The trial court agreed with the latter proposition and granted the motion with respect to the backpack. However, the court concluded that

there was sufficient proof of the physical fight over the lighter and overruled the motion for acquittal on this basis.

{¶ 22} As was noted, Sewell offered his own testimony at trial. Sewell claimed that the lighter belonged to him. His story was that he and his friends had encountered Rutlin earlier in the day at Riverscape. At that time, Rutlin walked up to them and asked if anyone had a lighter. Deonte had Sewell's lighter at that point, and let Rutlin use it. Sewell then started talking to Adara (the woman in the Ace Hardware vest), and lost track of Rutlin. Subsequently, Sewell noticed that Rutlin was gone. When he asked Deonte if he had gotten the lighter back, Deonte said, "Oh, my bad." Transcript of Trial Proceedings, p. 182.

{¶ 23} Eventually, the four friends went to the Hub area. They were there for about ten to fifteen minutes before seeing Rutlin. At that point, they had walked up Main Street towards Third and Main. Rutlin was walking west on Third Street, and Deonte recognized him as the man who had Sewell's lighter. When they arrived at the corner of Third and Main Streets, Deonte asked Rutlin if he could use his lighter. In response, Rutlin pulled out Sewell's lighter. According to Sewell, he quickly noticed that the lighter belonged to him because his initials are on the bottom of all his lighters. Sewell described a process by which he scratches his initials, "K.S," on the bottom edge of all his lighters by using his fingernails.

{¶ 24} Deonte got the lighter from Rutlin and used it to light a cigar that the group of friends intended to share. Sewell walked past Rutlin and told him that the lighter was his because he had noticed his initials. Sewell then took the lighter from Deonte. They were laughing at Rutlin because he kept "going off"; Rutlin wanted the lighter back, and

they were not giving it to him. Sewell admitted holding the lighter in his hand and said he had no intention of giving the lighter back to Rutlin because he (Sewell) owned the lighter. Sewell told Rutlin that the lighter was the one Rutlin had gotten from them at Riverscape.

**{¶ 25}** According to Sewell, Rutlin tried to fight him to get the lighter back. Sewell admitted punching Rutlin in the face. Sewell also said he eventually picked up the backpack and ran away because he was trying to get away from Rutlin. Sewell further said that he knew Rutlin was chasing him, but was unaware that he was being chased by anyone else. Sewell admitted running into the garage at Performance Place because he had seen the police and was trying to hide and get away. And finally, Sewell admitted changing out of his blue scrubs.

**{¶ 26}** Two lighters were found in Sewell's pocket when he was arrested. One was a tall red BIC lighter and the other was a smaller BIC lighter. As to the presence of these two lighters in his pocket, Sewell claimed the smaller lighter was one he had borrowed from Adara that did not work. On rebuttal, Hall presented the two lighters that he had retrieved from the property room and demonstrated that the smaller lighter, in fact, was operational. Hall also testified that he could not see any initials scratched on the taller lighter (the one in dispute), nor could he see any markings that did not appear to be part of the original packaging. On surrebuttal, Sewell stated that he was having difficulty seeing the mark he made in the plastic part of the lighter. He then looked at the lighter with a magnifying glass and stated that he could see a scratch on the plastic.

**{¶ 27}** After hearing the evidence, the trial court found Sewell guilty of robbery and imposed community control sanctions, including intensive probation supervision for up to

five years.   Sewell timely appealed from his conviction and sentence.


II.   Denial of Motion for Acquittal

{¶ 28} Sewell's First Assignment of Error states that:

The Trial Court Erred to the Prejudice of the Appellant When It Improperly Denied Defendant's Motion for Acquittal in Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

{¶ 29} Under this assignment of error, Sewell contends that the trial court erred by denying his Crim.R. 29(A) motion for acquittal after he was acquitted of robbery based on the alleged theft of the backpack.   Sewell's argument is premised on an allegation that the State only mentioned the backpack during its opening statement, and failed to assert the theory that the theft of the lighter satisfied the underlying predicate for a robbery conviction.

{¶ 30} Under Crim.R. 29(A), a trial court may order a judgment of acquittal if the evidence is not sufficient to sustain a conviction for the charged offense.   When sufficiency of the evidence is at issue, the pertinent "inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)   *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

{¶ 31} Sewell was charged with a violation of R.C. 2911.02(A)(2), which provides, in relevant part, that:

No person, in attempting or committing a theft offense or in fleeing

immediately after the attempt or offense, shall do any of the following:

* * *

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another * * *.

**{¶ 32}** As was noted, the trial court conducted a bench trial on March 28, 2017. R.C. 2945.10 governs the order of proceedings at trial, and provides, in pertinent part, that:

The trial of an issue upon an indictment or information shall proceed before the trial court or jury as follows:

(A) Counsel for the state must first state the case for the prosecution, and may briefly state the evidence by which the counsel for the state expects to sustain it.

* * *

The court may deviate from the order of proceedings listed in this section.

**{¶ 33}** An acquittal may be granted after the State's opening statement if the State indicates that no offense was committed or that an accused was not guilty of the crime charged. *See, e.g., State v. Karcher*, 155 Ohio St. 253, 98 N.E.2d 308 (1951), paragraph one of the syllabus. Nonetheless, the requirement of making opening statements has been held discretionary for both the State and the defense, despite the mandatory language in R.C. 2945.10. This is because the statute also gives courts discretion to deviate from the order of proceedings. *State v. Shaker*, 68 Ohio App.2d 135, 138, 427 N.E.2d 537 (8th Dist.1980). *Accord City of Centerville v. Locker*, 2d Dist. Montgomery

No. 6835, 1981 WL 5355, *3 (Dec. 2, 1981).

{¶ 34} We have also noted that it is not unusual for opening statements to be waived when trial is to the bench, rather than a jury. *State v. Brickman*, 2d Dist. Greene No. 85-CA-20, 1986 WL 2365, *4 (Feb. 20, 1986) (waiver by defense of opening statement). *See also Springfield v. Pullins*, 130 Ohio App.3d 346, 352, 720 N.E.2d 138 (2d Dist.1998) (both sides waived opening statements in trial to court); *State v. New*, 197 Ohio App.3d 718, 2012-Ohio-468, 968 N.E.2d 607, ¶ 2 (10th Dist.) (both sides waived opening statements in bench trial).

{¶ 35} In the case before us, the prosecutor did not waive opening statement, but instead made a brief presentation to the trial court. During his opening statement, the prosecutor noted that Rutlin had been approached by Sewell and several other young men who asked to borrow his lighter. Transcript of Trial Proceedings, p. 7. The prosecutor then briefly outlined the testimony of anticipated witnesses, who would indicate that Sewell began to badger Rutlin, punched Rutlin, and then took a backpack that Rutlin had put down when the assault began. *Id.* After outlining testimony about the chase, including video surveillance that showed an individual matching Sewell's description entering the parking garage "immediately after the robbery took place," the prosecutor noted Sewell's statement to the police that he took Rutlin's bag so Rutlin would leave him alone. *Id.* at p. 8.

{¶ 36} Finally, the prosecutor said, "At the end of this trial, after you've heard all the evidence that will be presented to you, the State asks that you find the defendant guilty of robbery." *Id.* The prosecutor did not specifically state that either the lighter or the backpack was the underlying theft offense for the robbery charge.

**{¶ 37}** During trial, the State elicited evidence during its case that the lighter belonged to Rutlin, that it was taken from him and not returned, despite his request, and that it came into Sewell's possession prior to the fight. Sewell did not dispute that he hit Rutlin; his eventual defense was that the lighter belonged to him and that he was defending himself.

**{¶ 38}** At the end of the State's case, Sewell asked the court to acquit him of the robbery charge because the State failed to indicate during opening statement that the robbery charge was based on the theft of the lighter. The trial court rejected this argument, noting that opening statements are not evidence. A lengthy discussion then ensued concerning whether, for purposes of the underlying theft offense, there was sufficient evidence to indicate that Sewell had the intent to deprive Rutlin of either the lighter or backpack, and whether the physical harm that was inflicted took place as Sewell committed the theft or was fleeing immediately after the theft. Transcript of Trial Proceedings, pp. 156-176. Ultimately, the court concluded that the evidence was sufficient regarding the theft of the lighter, but not the backpack. The court also commented that the indictment did not speak to either the backpack or the lighter, and again stressed that opening statements are not evidence. *Id.* at p. 176.

**{¶ 39}** After the motion was overruled with regard to the lighter, Sewell testified and indicated, as noted above, that the lighter belonged to him. Sewell renewed his motion for acquittal at the close of his own evidence, and the court again overruled the motion. *Id.* at p. 206.

**{¶ 40}** "When a defendant challenges the sufficiency of the evidence, the defendant is arguing that the State presented inadequate evidence on an element of the

offense to sustain the verdict as a matter of law." *State v. Griffith*, 2015-Ohio-4112, 43 N.E.3d 821, ¶ 26 (2d Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus.

{¶ 41} After considering the matter, we agree with the trial court. We have said before that "[o]pening statements are not 'evidence.' " *State v. Smith*, 84 Ohio App.3d 647, 662, 617 N.E.2d 1160 (2d Dist.1992). *Accord State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 40 (2d Dist.); *State v. Taylor*, 2d Dist. Montgomery No. 23990, 2014-Ohio-3647, ¶ 36. *See also Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, 3 N.E.3d 155, ¶ 29 ("Opening statements are not evidence; they serve merely as previews of a party's claims and are designed to help the jury follow the evidence as it is presented later in the trial.")

{¶ 42} In *Shaker*, 68 Ohio App.2d at 138, 427 N.E.2d 537, the Eighth District Court of Appeals rejected a defendant's contention that the prosecution's opening statement was required because it would provide necessary notice to the defendant of the charges against him. In this regard, the court stated:

[T]here is ample notice of the charges against a defendant by virtue of the

complaint or indictment filed against the defendant by the state. A

defendant has significant discovery rights under Crim.R. 16 to enable him to obtain necessary evidence to properly prepare a defense. R.C. 2945.10(A) does not require the state prosecutor to state any evidence by which he expects to sustain his case against a defendant.

*Id.*

**{¶ 43}** In *State v. Cass*, 10th Dist. Franklin No. 99AP-1422, 2000 WL 1678024 (Nov. 9, 2000), the court of appeals held that defense counsel did not commit ineffective assistance by waiving an opening statement, because "[i]n a bench trial, the judge is aware of the nature of the case, so he can anticipate what the attorney is trying to prove." *Id.* at *3. This court has also concluded that defense counsel did not render ineffective assistance by failing to make an opening statement because the "case was tried to an experienced judge, who was familiar with the issues and the law." *In re Robert B.*, 186 Ohio App.3d 389, 2009-Ohio-3644, 928 N.E.2d 746, ¶ 46 (2d Dist.). While these cases deal with waiver of opening statements, the point is that in a bench trial, the court is well-aware of the legal requirements of offenses that have been charged.

**{¶ 44}** The indictment charged that Sewell "on or about November 4, 2015 * * *, in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, did inflict, attempt to inflict, or threaten to inflict physical harm on another, to wit, STANLEY RUTLIN; contrary to the form of the statute, (in violation of Section 2911.02(A)(2) of the Ohio Revised Code) * * *." Doc. #11, p. 1. This wording was appropriate under Crim.R. 7(B), which indicates that the statement in the indictment "may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements

of the offense with which the defendant is charged." In the case before us, the indictment tracked the statutory language in R.C. 2911.02(A)(2), and was sufficient to put Sewell on notice of the charge. (Citations omitted.) *See, e.g., State v. Jackson*, 134 Ohio St.3d 184, 2012-Ohio-5561, 980 N.E.2d 1032, ¶ 14. If Sewell wanted further specificity, he could have requested a bill of particulars. *Id.* at ¶ 15, citing *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985).

**{¶ 45}** Furthermore, there is no indication that the State changed its theory of the case during trial. In responding to the motion for acquittal, the State referenced the testimony that Rutlin's lighter had been taken from him, that Sewell would not give it back after Rutlin requested that he do so, and that an altercation then ensued. The State further noted that Sewell had moved the backpack away while fighting with Rutlin and had eventually scooped it up as he ran away. After making these observations, the State commented that "[t]hose facts, at this juncture, show that the defendant in the commission of a theft offense, either the taking of the lighter or the taking of the backpack, punched Mr. Rutlin in the face and inflicted physical harm, however slight that physical harm might be." Transcript of Trial Proceedings, pp. 155-156.

**{¶ 46}** As was noted, an acquittal may be granted after the State's opening statement if the State indicates that no offense was committed or that an accused was not guilty of the crime charged. *Karcher*, 155 Ohio St. 253, 98 N.E.2d 308, at paragraph one of the syllabus. That did not occur during this case. The State made no such admissions. In addition, Sewell failed to make such a motion – and for the reasons mentioned, the motion would have been without merit, anyway.

**{¶ 47}** Accordingly, the trial court did not err in overruling Sewell's Crim.R. 29(A)

motion for acquittal concerning the robbery charge. The First Assignment of Error, therefore, is overruled.

### III. Manifest Weight Analysis

{¶ 48} Sewell's Second Assignment of Error states as follows:

The State Failed to Meet Its Burden of Proof by the Manifest Weight of the Evidence.

{¶ 49} Under this assignment of error, Sewell contends that the judgment is against the manifest weight of the evidence because there was a dispute about ownership of the lighter, and the trial court lost its way by crediting Rutlin's statements over Sewell's testimony. Sewell also argues that even if a theft offense may have occurred, it took place prior to the assault. Thus, when the assault occurred, Sewell already had the lighter in his possession.

{¶ 50} "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 51} Furthermore, " '[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.' " *State v. Flores-Lopez,* 2017-Ohio-690, 85 N.E.3d 534, ¶ 50 (2d Dist.), quoting *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 52} Our review of the record reveals that the judgment was not against the manifest weight of the evidence. The trial court specifically stated that it found Rutlin's testimony credible and believed that Rutlin owned the lighter. See Transcript of Trial Proceedings, p. 163. The court reiterated this credibility finding in its written decision. Doc. #68, Verdict and Judgment of Guilty on Count One, p. 3. The court further stated that Sewell's testimony was not credible. *Id.* at p. 5. As was noted, we must give these credibility decisions deference. Furthermore, we see no basis for concluding that the trial court lost its way. There was evidence in the record to support the trial court's findings. A factual dispute existed, and the court resolved it by choosing to believe the witness it found more credible.

{¶ 53} We also disagree with Sewell's contention that a robbery did not take place because he already had the lighter in his possession when the assault occurred. In this regard, R.C. 2911.02(A)(2) prohibits persons from inflicting or attempting to inflict physical harm on another "in attempting or committing a theft offense or in fleeing immediately after the attempt or offense * * *." As a result, a violation can occur in several situations.

**{¶ 54}** We have previously rejected the type of argument that Sewell is making. *See State v. Frazier*, 2016-Ohio-727, 60 N.E.3d 633 (2d Dist.). In *Frazier*, the defendant grabbed an e-cigarette from the victim while they were riding on an RTA bus. The defendant (Frazier) refused to return the e-cigarette, and as he was about to exit the bus, told the victim that he would have to fight him for it. *Id.* at ¶ 5-6. Frazier then lunged at the victim, punched him, exited the bus, and left the scene. *Id.* at ¶ 7.

**{¶ 55}** After being convicted of robbery, Frazier contended on appeal that his conviction was against the manifest weight of the evidence because "the State failed to present sufficient evidence that he inflicted physical harm as part of or immediately after the theft offense * * *." *Id.* at ¶ 36. In particular, Frazier focused on the fact that the fight occurred at least two or three minutes after he took the e-cigarette, and there was no evidence that he had inflicted physical harm on the victim at the time the e-cigarette was taken. *Id.*

**{¶ 56}** We noted that the Supreme Court of Ohio had "explained that the force or physical harm attendant to the theft offense does not need to be inflicted in furtherance of a purpose to deprive another of property." *Id.* at ¶ 37, citing *State v. Thomas*, 106 Ohio St.3d 133, 2005-Ohio-4106, 832 N.E.2d 1190, ¶ 13. Thus, it was not necessary that Frazier have assaulted the victim to obtain the e-cigarette; it would be sufficient if he assaulted the victim after obtaining possession of an object that he knew did not belong to him, and fled immediately thereafter. The same observations apply here. Sewell did not need to assault Rutlin prior to obtaining the lighter.

**{¶ 57}** In *Frazier*, we also considered the issue of whether the physical harm had been committed while the defendant was fleeing immediately after the attempt or offense.

In connection with this point, we commented that:

> Focusing on the phrase "or in fleeing immediately after the attempt or offense," the supreme court noted that neither "fleeing" nor "immediately" is defined by the Ohio Revised Code. *Thomas* at ¶ 15. The supreme court defined "to flee" as " '[t]o run away from,' 'to try to escape,' '[t]o hasten for safety,' or '[t]o withdraw hastily.' " *Id.*, quoting V Oxford English Dictionary (2d Ed.1989) 1037. The Court further defined "immediately" as " '[w]ith no person, thing, or distance, intervening in time, space, order, or succession,' or '[w]ithout any delay or lapse of time.' " *Id.*, quoting at VII Oxford English Dictionary (2d Ed.1989) 682.

*Id.* at ¶ 37.

**{¶ 58}** We concluded that whether force has been used "as part of or while fleeing immediately after an offense is fact-specific." *Id.* at ¶ 38. After discussing the facts in *Frazier,* we held that the conviction was not against the manifest weight of the evidence because the assault occurred within minutes of the theft. *Id.* at ¶ 42. We contrasted the situation in *Frazier* with *Thomas*, where the defendant had stolen some groceries and had dropped them soon after exiting the store. The defendant was then followed into a nearby laundromat by an off-duty police officer who worked for the store. After the defendant agreed to return to the store, a scuffle ensued when they arrived back at the front door of the store. *Frazier* at ¶ 38-39, citing *Thomas*, 106 Ohio St.3d 133, 2005-Ohio-4106, 832 N.E.2d 1190, at ¶ 16. Under these circumstances, the Supreme Court of Ohio concluded that physical harm did not occur while the defendant was fleeing immediately after the theft. *Id.* at ¶ 39.

{¶ 59} The facts in the case before us are comparable to those in *Frazier*, and they are not like the facts in *Thomas*. The State notes in its brief (and Sewell does not dispute) that only about 45 seconds elapsed between the time Rutlin made contact with Sewell's group and when Sewell took the lighter and punched Rutlin in the face. State's Brief, p. 14, citing State's Ex. 1 at 13:31:40-13:32:24. This is even less than the two or three minute time lapse that the defendant relied on in *Frazier* (and that we rejected). *Frazier* at ¶ 36 and 41-42. Even if more time had elapsed, however, the testimony indicated that a fight occurred over the lighter, and Sewell ran away immediately after causing physical harm to Rutlin.

{¶ 60} Accordingly, the trial court's decision was not against the manifest weight of the evidence, and the Second Assignment of Error, therefore, is overruled.

## IV. Ineffective Assistance of Counsel

{¶ 61} Sewell's Third Assignment of Error states that:

> The Appellant Received Ineffective Assistance of Counsel When Counsel Failed to Request a Bill of Particulars and Failed to Cross-Examine a Key Witness of the State.

{¶ 62} In contending that trial counsel provided ineffective assistance, Sewell relies on two points. The first is that trial counsel erred in failing to request a bill of particulars, which allegedly would have mentioned that the item stolen was the backpack, not the lighter, and would have resulted in a complete acquittal.

{¶ 63} Claims of ineffective assistance of trial counsel are reviewed under the analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Under this analysis, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Bradley*, at paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus.

{¶ 64} We accord trial counsel with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (Citation omitted.) *Strickland*, 466 U.S. at 689. And finally, we are not allowed to use hindsight "to distort the assessment of what was reasonable in light of counsel's perspective at the time." *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 65} "In a criminal prosecution the state must, in response to a request for a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possesses such information." *Sellards*, 17 Ohio St.3d 169, 478 N.E.2d 781, at syllabus. *See also* Crim.R. 7(E). "A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *State v. Smith*, 2d Dist. Montgomery No. 19370, 2003-Ohio-903, ¶ 20, citing *State v. Wilson*, 29 Ohio St.2d 203, 280 N.E.2d 915 (1972).

{¶ 66} Even if we assumed that trial counsel should have requested a bill of

particulars, Sewell provides no reason why this would have affected the trial. Sewell admitted that he hit Rutlin; his defense was that the lighter belonged to him, not to Rutlin, and that, as a consequence, he could not be guilty of an underlying theft offense. *Compare State v. Kisseberth*, 2d Dist. Montgomery No. 20500, 2005-Ohio-3059, ¶ 65, *reversed in part on other grounds*, *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174, ¶ 86 (defense counsel lacked compelling reasons to file motion for bill of particulars, where defendant's testimony in case involving sexual battery was that he had not engaged in sexual conduct with victims; filing motion for bill of particulars would have had "no discernible effect on the outcome of the trial").

{¶ 67} We have also previously observed that details provided by a bill of particulars would not have resulted in a reasonable probability of a different outcome where the fact-finder found the victim's testimony more credible. *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 47 (2d Dist.). In addition, we have said that "while it is true that counsel did not request a bill of particulars, the record demonstrates that counsel did seek all available discovery under both Crim.R. 16 and under the broader discovery provisions of the local court management plan. When the State allows open-file discovery, as it did in this case, a bill of particulars is not required." *State v. Evans*, 2d Dist. Montgomery No. 20794, 2006-Ohio-1425, ¶ 24, citing *State v. Tebcherani*, 9th Dist. Summit No. 19535, 2000 WL 1729456 (Nov. 22, 2000) (finding no prejudice in counsel's failure to request a bill of particulars). *See also State v. Jamison*, 9th Dist. Summit No. 27664, 2016-Ohio-5122, ¶ 6. There is no indication in the record that defense counsel failed to receive all available discovery.

**{¶ 68}** While the Supreme Court of Ohio has said that bills of particulars should be provided if requested (which Sewell did not do here), the court has also stressed that the real question is whether the defendant's "lack of knowledge concerning the specific facts a bill of particulars would have provided him actually prejudiced him in his ability to fairly defend himself." *State v. Chinn*, 85 Ohio St.3d 548, 569, 709 N.E.2d 1166 (1999). As was noted, we find no possible way in which trial counsel's failure to file a motion for a bill of particulars prejudiced Sewell.

**{¶ 69}** Sewell's second ground for ineffective assistance of counsel is that trial counsel was ineffective during his cross-examination of the victim. This assertion is based on the following exchange:

Q [MR. HODGE]   Okay.   The lighter that you gave to his friend –

A   (indiscernible).

Q   Okay.   Do you know whether that was Mr. Sewell's lighter before you got it?

A   (indiscernible)   he came (indiscernible) his friend (indiscernible) what he's doing.   He (indiscernible).

THE COURT:   Mr. Rutlin, go ahead, say that again.   I couldn't understand you.

MR. HODGE:   I (indiscernible).

THE WITNESS:   (indiscernible) he come to me, his friend (indiscernible).   I (Indiscernible) and he's (indiscernible) my face.   You know, (indiscernible) lighter with his hands (indiscernible), walk away from (indiscernible), and I (indiscernible) my lighter.

THE COURT: Go ahead. Vick, if you would, re-ask the question.

MR. HODGE: Yeah, he didn't answer Judge. I'm going to give up.

THE WITNESS: (indiscernible).

MR. HODGE: I'll give up on that.

THE COURT: Okay.

MR. HODGE: Thank you.

Transcript of Trial Proceedings, pp. 94-95.

{¶ 70} According to Sewell, trial counsel was ineffective because he did not complete cross-examination on this point, and should not have given up on his attempt to determine if Rutlin would have admitted that the lighter belonged to Sewell.

{¶ 71} After examining the record, we do not find that trial counsel was ineffective, nor do we find any prejudice. As was noted, Rutlin was deaf and both the State and defense had some difficulty during their examinations. However, Rutlin clearly stated the following: Sewell's friends came up to him on the day of the incident near the RTA station and asked him for a lighter; he gave Sewell's friend, Deonte, the lighter; Deonte did not give the lighter back to Rutlin; Sewell came up and took the lighter away from Deonte; even though Rutlin asked Sewell for the lighter back, Sewell would not give it back; Sewell kept moving around and put up his fists; Rutlin took off his book bag and told Sewell to "come on and do this" because Sewell would not give him back his lighter, people were laughing; Sewell hit Rutlin in the face and hurt him; and Sewell grabbed Rutlin's book bag and ran off. *Id.* at pp. 81-86. Rutlin further stated that Sewell hit him over the lighter. *Id.* at p. 91.

{¶ 72} Despite Rutlin's hearing problems, this testimony was quite clear. During

cross-examination, Rutlin also stated that he had gone to the store and bought the lighter. He also denied being at Riverscape earlier that day (which is where Sewell claimed Rutlin had been when he borrowed Sewell's own lighter). *Id.* at pp. 93-94. Again, this testimony was very clear. After receiving these responses, defense counsel attempted, as indicated above, to question Rutlin about whether he knew the lighter belonged to Sewell before he got it. As an additional matter, even during the above exchange, Rutlin specifically referred to "my lighter." *Id.* at p. 95.

**{¶ 73}** Since Rutlin had clearly indicated previously that the lighter belonged to him, that he had bought it at a store, and that he did not meet Sewell and his friends earlier that day at Riverscape, defense counsel's failure to further persist does not mean that counsel was ineffective. There is no indication that Rutlin would have contradicted his prior testimony, which was well-understood.

**{¶ 74}** However, even if counsel should have persisted further, the failure to do so was not prejudicial, because the trial court found Rutlin credible and believed that the lighter belonged to Rutlin. The trial court also did not find Sewell credible. In view of these facts, there is no reasonable probability that the outcome of the trial would have been different.

**{¶ 75}** Accordingly, the Third Assignment of Error is overruled.

## V. Conclusion

**{¶ 76}** All of Sewell's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Heather N. Jans
Enrique G. Rivera-Cerazo
Hon. Michael W. Krumholtz